*In re* ISRAEL ROLDÁN GONZÁLEZ, querellado.

*Número:* CP-2011-0016      *Resuelto:* 19 de abril de 2016

*Luis R. Román Negrón* y *Margarita Mercado Echegaray*, pro-curadores generales, *Tatiana M. Grajales Torruella*, subprocuradora general, *María C. Umpierre Marchand* y *Edna Evelyn Rodríguez Benítez*, procuradoras generales auxiliares; *Harry N. Padilla Martínez*, abogado del quere-llado; *Flavio E. Cumpiano Villamor*, comisionado especial.

PER CURIAM: En el caso que reseñamos a continuación, nos vemos obligados a intervenir con un letrado que, luego de iniciada la relación abogado-cliente, abandonó el asunto encomendado por su representada y falló a su deber de mantener una comunicación directa y efectiva con ella. Esta conducta, sin lugar a dudas, constituye una afrenta patente a los deberes prescritos en los Cánones 18 y 19 del Código de Ética Profesional, 4 LPRA Ap. IX (Cánones 18 y 19). Evaluado su proceder en ese asunto, y en conformidad con el derecho aplicable, adelantamos que lo suspendemos del ejercicio de la abogacía y la notaría. Examinemos, pues,

las circunstancias fácticas que sustentan nuestra determinación.

I

A. *Hechos*

La Sra. Judy Nieves Ramírez (señora Nieves o querellante) es propietaria y presidenta de ABC Infantil, Inc. (ABC Infantil o la Corporación), una compañía sin fines de lucro dedicada al cuido de niños, así como a la educación prescolar. En diciembre de 2007 ABC Infantil suscribió un Contrato de Creación de Empleo con la Administración de Desarrollo Socioeconómico de la Familia del Departamento de la Familia (ADSEFDF o la Agencia).[1] A cambio de recibir una subvención económica, la Corporación se obligó a reclutar, adiestrar, capacitar y emplear a cinco participantes del Programa de Asistencia Temporera para Familias Necesitadas, creado en virtud de legislación federal. El contrato tendría vigencia desde el 26 de diciembre de 2007 hasta el 30 de septiembre de 2008.

Durante el mes de abril de 2008, representantes de la ADSEFDF llamaron a la querellante para advertirle que cancelarían el contrato por alegaciones de maltrato institucional a menores.[2] El 14 de mayo de 2008 la agencia notificó formalmente a la Corporación la resolución del acuerdo. Como producto de la investigación realizada por la ADSEFDF, la señora Nieves fue acusada por el delito de maltrato a menores.[3] Celebrado el juicio en su fondo, el 23 de junio de 2009 el Tribunal de Primera Instancia declaró a la querellante "no culpable" del delito imputado.

---

[1] No surge claramente la fecha precisa del documento al cual hacemos referencia.

[2] Las alegaciones consistían en que, presuntamente, amarraba a los niños en las sillas cuando no exhibían una buena conducta.

[3] Conforme disponía el Art. 75 de la Ley Núm. 177-2003 (derogada), 8 LPRA ant. sec. 450c, Ley para el Bienestar y la Protección Integral de la Niñez.

Según consignado por el Comisionado Especial en su informe, la querellante entendía que la investigación que culminó en su procesamiento criminal fue fabricada y estuvo fundada en declaraciones falsas. Decidió, por lo tanto, buscar orientación legal para instar una acción civil contra el Gobierno que le permitiera, según ella, vindicar su nombre, su reputación y el de la Corporación. Así es como el 9 de septiembre de 2009 la señora Nieves acudió, junto con su hermana, al despacho del Lcdo. Israel Roldán González (licenciado Roldán o el querellado).[4]

En esa primera reunión, la cual se extendió por aproximadamente media hora, la querellante le relató al letrado lo sucedido y le explicó lo de la alegada fabricación del caso criminal en su contra por parte de la agencia. Considerado el origen de los fondos del acuerdo entre ABC Infantil y la ADSEFDF, el querellado le indicó a la señora Nieves que podría haber jurisdicción federal en el asunto. Asimismo, le advirtió que, por haber transcurrido más de un año desde la resolución del contrato, su acción personal en daños por incumplimiento de contrato había prescrito.

El licenciado Roldán le requirió a la querellante todos los documentos atinentes al proceso aludido. Le informó, además, la necesidad de probar los daños económicos. Por último, le explicó que sus honorarios sumarían el 33% de la indemnización obtenida y le solicitó $3,000 para los gastos del caso, incluyendo la traducción de los documentos al idioma inglés. La señora Nieves le pidió tiempo para conseguir el dinero, ya que al no contar con fondos, tendría que tomarlo prestado. Culminada la reunión, la querellante, así como su hermana, entendieron que el abogado sometería una reclamación en daños y perjuicios en el foro federal.

Una semana más tarde, la señora Nieves se presentó a la oficina del querellado para entregarle un cheque emi-

---

(4) El Lcdo. Israel Roldán González (licenciado Roldán o el querellado) fue admitido al ejercicio de la abogacía el 26 de junio de 1970 y prestó juramento como notario el 23 de julio de ese mismo año.

tido a su favor por la suma solicitada. Igualmente, le suministró una caja con los documentos atinentes a la gestión delegada al abogado, todos relacionados con la investigación llevada a cabo por la ADSEFDF, tales como declaraciones juradas, credenciales, el Contrato de Creación de Empleo y comunicaciones suyas con el Departamento de la Familia. El licenciado Roldán los examinó brevemente. En esa ocasión no realizó observación alguna sobre los materiales provistos ni le requirió prueba documental adicional.[5]

Luego de esta segunda reunión, el licenciado Roldán no volvió a comunicarse con la señora Nieves, a pesar de las múltiples llamadas telefónicas, mensajes y gestiones hechas por ella para conocer el estatus de su caso.[6] Así las cosas, para el mes de marzo de 2010 la querellante se presentó nuevamente a la oficina del querellado. En esta ocasión fue atendida por el Lcdo. Joel López Borges (licenciado López), empleado del bufete del licenciado Roldán. En la breve entrevista que se prolongó por cinco o diez minutos, éste no le pudo orientar ni proveer información alguna sobre el caso.

En cierto momento después de esa reunión, los licenciados Roldán y López tuvieron oportunidad de discutir entre ellos y estudiar con detenimiento el asunto delegado por la señora Nieves. Examinado el contrato concluyeron que, si bien surgía de los hechos alegados la posibilidad de entablar una reclamación en el foro estatal por incumplimiento de contrato, no existía jurisdicción federal sobre la materia. Razonaron, además, que la causa de acción pertenecía a la entidad corporativa y no a la señora Nieves, por

---

[5] Según hizo constar el Comisionado Especial en su informe, no se formalizó la relación mediante un contrato escrito de servicios profesionales y se ignora dónde el querellado consignó el dinero entregado para los gastos del caso.

[6] Cabe destacar que la señora Nieves solicitó una cita con el licenciado Roldán, pero su secretaria le informó que éste no podría atenderla, ya que no contaba con espacio disponible. Incluso, en una ocasión la querellante acudió a la oficina del abogado sin cita y se sentó a esperar, mas nunca fue atendida por su personal.

lo que la querellante estaba impedida de demandar por los daños personales sufridos a consecuencia de la resolución del Contrato de Creación de Empleo. Determinaron, entonces, que necesitarían, entre otras cosas, prueba de los daños a la Corporación. El querellado no reveló a la querellante la más reciente teoría legal concerniente al asunto encomendado.

La señora Nieves se personó a la oficina del licenciado Roldán en compañía de su hermana en *junio de 2010*. La atendió, nuevamente, el licenciado López, quien en esta ocasión le anunció que se le había asignado su caso.[7] Asimismo, le indicó que estaba impedido de presentar una acción legal ante el foro federal por falta de jurisdicción sobre la materia. Dado que ya no era necesaria la traducción de los documentos, la querellante le requirió la devolución de los $3,000 entregados al querellado. No obstante, el licenciado López le informó que no procedía el rembolso.

Por otra parte, el licenciado López le confirmó que la causa de acción en daños y perjuicios pertenecía a la Corporación. La señora Nieves entendió que el abogado no le veía posibilidades al caso y que lo que pretendía era disuadirla de iniciar un proceso judicial. Sin embargo, al ella insistir, el licenciado López afirmó que presentaría la reclamación de ABC Infantil. El licenciado López le solicitó a la señora Nieves toda la documentación que sustentara la existencia de la Corporación y la alegada pérdida económica. Al salir de la reunión, tanto la querellante como su hermana tenían la expectativa de que se presentaría el caso. La señora Nieves nunca suministró la prueba que se le requirió en esa reunión.

Ni el licenciado Roldán ni el licenciado López sometieron la reclamación judicial ya que, según ellos, al no contar con la prueba necesaria, no tenían certeza del derecho de

---

[7] La querellante ignoraba que en la oficina del licenciado Roldán se le podían delegar los casos a otros abogados. El querellado nunca le orientó sobre este particular.

la Corporación a ser indemnizada. Tampoco le dieron seguimiento a la querellante mediante comunicación telefónica o escrita sobre los documentos solicitados.

Pasado el tiempo sin que la querellante recibiera información sobre el estado de su caso, y sintiéndose ésta defraudada, el 12 de noviembre de 2010 la señora Nieves presentó una queja ante la Oficina de la Procuradora General (Procuradora). El 27 de diciembre de 2010, tras recibir la comunicación de la Queja en su contra, el licenciado Roldán le extendió un cheque a la querellante, devolviéndole así los $3,000 que ella le había adelantado.

Por su parte, la señora Nieves, frustrada y decepcionada, no hizo gestión ulterior para contratar los servicios de otro abogado que atendiera el asunto que le fuera delegado al querellado.

## B. *Trámite disciplinario*

Presentada la queja y su correspondiente contestación, la Procuradora investigó los hechos antes relatados y nos remitió su informe. Considerado el mismo, así como el Escrito en Cumplimiento de Resolución interpuesto por el querellado, el 21 de octubre de 2011 ordenamos que se sometiera una querella contra el licenciado Roldán. El 23 de noviembre de 2011 se presentó la querella, mediante la cual se le formularon dos cargos al licenciado Roldán por presuntamente infringir los Cánones 18 y 19.

El 14 de marzo de 2012 el querellado contestó la querella. En esencia, negó las imputaciones éticas en su contra y nos urgió a desestimar los cargos presentados. Más adelante, el 23 de mayo de 2012, designamos al Lcdo. Flavio E. Cumpiano Villamor, exjuez del Tribunal de Primera Instancia, para que fungiera como Comisionado Especial (Comisionado).

Transcurridos varios incidentes procesales, la vista en su fondo se celebró el 3 de febrero de 2015. El Comisionado rindió su informe y encontró infringidas las dos disposiciones éticas imputadas. Tras haber solicitado la grabación de

los procedimientos y luego de concederle varias prórrogas, finalmente el 13 de octubre de 2015 el licenciado Roldán presentó su reacción al informe. En su escrito reiteró su rechazo a las infracciones éticas imputadas y solicitó su archivo.

II

A. *Canon 18: Competencia del abogado y consejo al cliente*

" 'Los Cánones de Ética Profesional establecen las normas básicas que deben regir la relación de un abogado con su cliente. ... Su gestión profesional debe llevarse a cabo aplicando en cada caso sus conocimientos, experiencia y habilidad desempeñándose de una *forma adecuada y responsable, capaz y efectiva*' ". (Énfasis en el original). *In re Filardi Guzmán*, 144 DPR 710, 715 (1998), citando a *In re Acosta Grubb*, 119 DPR 595, 602 (1987). En virtud de lo anterior, el Canon 18 del Código de Ética Profesional exige a cada abogado desplegar el más alto grado de *diligencia, competencia y responsabilidad* en su quehacer profesional. Así, el abogado incurre en una falta al Canon 18 cuando, a pesar de asumir la representación legal de un cliente, demuestra una capacitación inadecuada o presta una atención indebida a la causa encomendada. *In re Nieves Nieves*, 181 DPR 25 (2011).

Todo abogado tiene el deber ético de conocer el ordenamiento legal y actuar en conformidad con este. *In re Ayala Vega I*, 189 DPR 672 (2013); *In re Nieves Nieves*, supra. Una representación legal adecuada presupone que el abogado posee los conocimientos y las destrezas jurídicas vinculadas a su gestión profesional. El abogado logra este objetivo sometiéndose a un estudio riguroso y continuo de las normas legales aplicables a las controversias planteadas en cada uno de sus casos. Véase Canon 2 (4 LPRA Ap. IX).

■       Asimismo, el abogado está obligado a defender diligentemente, con celo y dentro del marco ético, los derechos e intereses de su cliente. *In re Rivera Nazario*, 193 DPR 573 (2015); *In re Cuevas Borrero*, 185 DPR 189 (2012). Esto significa que, cuando acepta la representación legal de una persona, debe realizar de manera adecuada, responsable, efectiva y oportuna todas las gestiones para las cuales fue contratado, sin dilaciones que puedan afectar la tramitación o la solución rápida de la controversia. *In re Miranda Daleccio*, 193 DPR 753 (2015); *Pueblo v. Quiles Negrón et al.*, 193 DPR 609 (2015); *In re Pietri Torres*, 191 DPR 482 (2014). La inacción, la imprudencia, el desinterés y la desidia en la tramitación de los asuntos que le han sido confiados, constituyen una patente infracción al Canon 18. *In re Miranda Daleccio*, supra. Véanse, además: *In re Hance Flores*, 193 DPR 767 (2015); *In re Díaz Nieves et als.*, 189 DPR 1000 (2013).

■       Un letrado es negligente en su quehacer profesional cuando, entre otras cosas: (1) abandona o desatiende el caso; (2) no comparece a los señalamientos realizados por el foro judicial o el administrativo; (3) permite que expire un término prescriptivo o jurisdiccional de una acción; (4) comete errores crasos, y (5) incurre en una actuación negligente que resulta en la desestimación o archivo del caso. *In re Miranda Daleccio*, supra; *In re Rivera Nazario*, supra. También, hemos indicado que un abogado que tarda irrazonablemente en realizar la gestión para la cual fue contratado o que simplemente no la hace, muestra una conducta indiferente, incompatible con su deber ético de diligencia. *In re Villalba Ojeda*, 193 DPR 966 (2015); *In re Flores Ayffán*, 150 DPR 907 (2000); *In re Corujo Collazo*, 127 DPR 597 (1990).

B. *Canon 19: Información al cliente*

■       La obligación que consagra este precepto ético está separada y es independiente del deber de diligencia.

*In re Rivera Nazario*, supra; *In re Colón Morera*, 172 DPR 49 (2007). Constituye un elemento inherente a la relación fiduciaria que caracteriza el vínculo abogado-cliente. *In re Miranda Daleccio*, supra; *In re Santos Cruz*, 193 DPR 224 (2015). En virtud de lo anterior, el Canon 19 del Código de Ética Profesional requiere a todo miembro de la profesión legal el mantener a sus clientes continuamente informados de los acontecimientos medulares relacionados con el asunto objeto de la representación legal. Véanse: *In re Santos Cruz*, supra; *In re Pacheco Pacheco*, 192 DPR 553 (2015); *In re Cardona Vázquez*, 108 DPR 6 (1978). Esto supone tenerlos al tanto del estado de la encomienda, su progreso y las gestiones realizadas, consultarles todo aspecto que rebase el ámbito discrecional de la representación legal, así como acatar sus directrices, siempre y cuando estén dentro del marco ético. *In re Rivera Nazario*, supra; *In re Cuevas Borrero*, supra; *In re Acosta Grubb*, supra.

■ La comunicación efectiva entre el abogado y su cliente es un componente esencial de la relación profesional. *In re Nieves Nieves*, supra. Por ello es menester que la información sobre el caso se brinde directamente al representado y no mediante terceros o intermediarios. *In re Santos Cruz*, supra; *In re Muñoz, Morell*, 182 DPR 738 (2011). El abogado no puede delegar en otros lo que le compete o está obligado a realizar como parte de su quehacer ético-profesional.

■ Es pertinente recalcar que el Canon 19 no incorpora una obligación recíproca o bilateral. Más bien, le impone al abogado, no a su cliente, un deber unidireccional de comunicación continua. *In re Rivera Nazario*, supra; *In re Nieves Nieves*, supra; *In re Santos Cruz*, supra; *In re Muñoz, Morell*, supra.

■ Las circunstancias de cada caso determinarán la información que es indispensable brindar al cliente. Sin

embargo, no cabe duda que un abogado lesiona este precepto cuando, por ejemplo: (1) no responde a los reclamos de información de su representado, *In re Hernández Pérez I*, 169 DPR 91 (2006); (2) se torna inaccesible, *In re Díaz Alonso, Jr.*, 115 DPR 755 (1984); (3) evade a su cliente, *In re Díaz Alonso, Jr.*, supra, y (4) no le advierte sobre las gestiones realizadas para tramitar la causa de acción encomendada, *In re Nieves Nieves*, supra. Cuando un cliente alega que el abogado lo mantuvo ajeno a las incidencias de su caso, corresponde al letrado indicar qué esfuerzos razonables realizó para comunicarse con él. *In re Nieves Nieves*, supra.

Por último, es importante que el cliente tenga suficiente información para poder tomar una determinación respecto a los asuntos legales que le confía a su abogado. De esa manera, el abogado previene los malentendidos que generan expectativas falsas en el cliente que, a su vez, pueden desembocar en infracciones éticas.

## C. *Sanción disciplinaria*

Al fijar la sanción disciplinaria que se le impondrá a un abogado que ha exhibido una conducta antiética, procede considerar los factores siguientes: (1) la reputación del abogado en la comunidad; (2) su historial disciplinario; (3) si la conducta es aislada; (4) si medió ánimo de lucro; (5) si presentó una defensa frívola de su conducta; (6) si ocasionó perjuicio a alguna parte; (7) si resarció al cliente; (8) si demostró aceptación y arrepentimiento sincero por la conducta que le fuera imputada, y (9) cualquier otra consideración atenuante o agravante que surja de los hechos. *In re Miranda Daleccio*, supra; *In re Planas Merced*, 180 DPR 179 (2010).

A fin de alcanzar una reglamentación ética uniforme y coherente, es necesario tratar las faltas semejantes del mismo modo. *In re Rivera Nazario*, supra; *In re Díaz Alonso, Jr.*, supra. Esto significa que, al decidir la sanción

disciplinaria, es forzoso ponderar las sanciones que hemos impuesto a otros miembros de la profesión en casos semejantes, pero sin dejar de reconocer que cada uno de éstos presenta circunstancias únicas y determinantes. *In re Villalba Ojeda*, supra; *In re De León Rodríguez*, 190 DPR 378 (2014). "Lo importante es que cuando nos apartemos de los precedentes similares, brindemos una explicación satisfactoria que justifique nuestro proceder". *In re Villalba Ojeda*, supra, pág. 983.

## III

En consideración a todo lo anterior, entendemos que el licenciado Roldán incurrió en las dos infracciones éticas que figuran en la Querella. Veamos.

### A. *Canon 18*

El Canon 18 está redactado de manera abarcadora,[8] por lo que su aplicación no se ciñe a una fase específica de la relación profesional o a una etapa del caso. Por el contrario, las obligaciones pautadas por el Canon 18 surgen a partir del momento cuando nace la relación abogado-cliente y se extiende durante el tiempo que ésta dure. Tam-

---

[8] Cónsono a lo anterior, el Canon 18 expresa lo siguiente:

"Será impropio de un abogado asumir una representación profesional cuando está consciente de que no puede rendir una labor idónea competente y que no puede prepararse adecuadamente sin que ello apareje gastos o demoras irrazonables a su cliente o a la administración de la justicia.

"Es deber del abogado defender los intereses del cliente diligentemente, desplegando en cada caso su más profundo saber y habilidad y actuando en aquella forma que la profesión jurídica en general estima adecuada y responsable.

"Este deber de desempeñarse en forma capaz y diligente no significa que el abogado puede realizar cualquier acto que sea conveniente con el propósito de salir triunfante en las causas del cliente. La misión del abogado no le permite que en defensa de un cliente viole las leyes del país o cometa algún engaño. Por consiguiente, al sostener las causas del cliente, debe actuar dentro de los límites de la ley, teniendo en cuenta no sólo la letra de ésta, sino el espíritu y los propósitos que la informan. No debe tampoco ceder en el cumplimiento de su deber por temor a perder el favor judicial ni la estimación popular. No obstante, un abogado puede asumir cualquier representación profesional si se prepara adecuadamente para ello y no impone gastos ni demoras irrazonables a su cliente y a la administración de la justicia". 4 LPRA Ap. IX (Canon 18).

poco está supeditado a situaciones en las que el representado ha visto afectada su causa de acción por alguna actuación u omisión del letrado.

Por lo tanto, una vez aceptó la representación legal de la señora Nieves, el licenciado Roldán estaba obligado a actuar en conformidad con los deberes prescritos en el Canon 18, independientemente de la naturaleza de la reclamación o de su desenlace. En otras palabras, asumida la encomienda profesional, tenía que actuar con diligencia y responsabilidad. No existe justificación para haberse tardado tanto en hacer un análisis legal de la situación por el simple hecho de que la causa de acción fuese de naturaleza contractual, como planteó en su último escrito.([9])

De la prueba presentada surge que el 9 de septiembre de 2009 la señora Nieves procuró la asesoría legal del querellado para presentar una reclamación contra el Gobierno por la resolución de un contrato habido entre la Corporación y la ADSEFDF. Luego de que ésta le divulgara ciertos detalles del asunto que le encomendaría, el letrado compartió su impresión inicial de los hechos, le orientó acerca de sus honorarios y le solicitó todos los documentos que dieron origen al proceso penal en contra de la querellante. A la semana siguiente, confiada en las representaciones hechas durante su primer encuentro, la querellante le entregó el dinero requerido para los gastos de tramitación del caso y le suministró la documentación precisada.

El licenciado Roldán finalmente hizo un estudio del asunto que trajera a su atención la querellante, *luego de seis meses de haber sido contratado.* No constituye una conducta antiética de por sí el que un abogado, tras efectuar un análisis ponderado de la controversia que se le pre-

---

([9]) Para justificar su proceder en este tema, expresó lo siguiente:

"A[u]n asumiendo sobre el tema de la diligencia, la realidad es que la reclamación fue atendida, estudiada, se brindó opinión y se requirió una información. *En una acción de quince años, no hay razón para que se tenga que apresurar de manera irrazonable el atender el asunto".* (Énfasis nuestro). Escrito fijando posición en cuanto al informe del señor Comisionado Especial, pág. 11.

senta, llegue a una opinión legal distinta a la inicial. Es posible que suceda así, ya que durante la primera reunión con su representado el abogado discute detalles atinentes a la contratación y descansa en la información que recoge de la entrevista, sin la oportunidad de poder estudiar y revisar todos los detalles del caso. Lo inaceptable es que, tal y como sucedió en este caso, después de contar con todos los datos pertinentes, el jurista se dilate injustificadamente en realizar un examen competente y oportuno para corroborar la existencia de una causa de acción y en cuál foro encausarla.

Por otro lado, como bien argumenta el querellado en su escrito, la normativa ética releva a un abogado de la obligación de presentar una demanda si éste no cuenta con la cooperación del cliente o con la información pertinente para sustentar sus alegaciones. Véanse: *In re Rivera Nazario*, supra; *In re Pinto Andino*, 156 DPR 259 (2002). De lo contrario, incurriría en una conducta impropia vedada por la reglamentación de la profesión legal. Sin embargo, es importante aclarar que, contrario a lo aquí acontecido, el abogado debe acreditar cada uno de los esfuerzos razonables y diligentes, conducentes a obtener la cooperación del cliente en su representación legal, como lo serían cartas, llamadas, mensajes, entre otros.[10] De esta manera, descarga su responsabilidad frente al cliente y frente a esta Curia.

En resumen, tal y como plasmó el Comisionado en su informe, una vez surgió la relación profesional, el querellado desatendió el asunto que la señora Nieves le encomendó. Eso fue así, a pesar de que la responsabilidad ética que fija

---

[10] Al discutir acerca de los documentos que se le solicitaron a la señora Nieves, el querellado justificó su proceder argumentando lo siguiente:

"Ante el hecho de que se le dijo personalmente, cuál era la razón para hacer el requerimiento por escrito. De hecho, si se hubiera plasmado por escrito el requerimiento, la situación sería más fácil desde el punto de vista evidenciario. Sin embargo, el señor Comisionado reconoció que la información se requirió. Y, que no se trajo. ¿Qué otra información tenía el licenciado Roldán González que suplirle a la señora Nieves Ramírez? La respuesta es simple, ninguna. Todo lo importante que tenía que informársele se le informó [...]". Escrito fijando posición en cuanto al informe del señor Comisionado Especial, pág. 14.

el Canon 18 lo obligaba a realizar un análisis profundo y oportuno de las circunstancias particulares del caso. Esa actitud indiferente e incompetente generó en su cliente desconfianza y un gran escepticismo, que lesionó la relación profesional. El descuido, la irresponsabilidad, la inacción y la imprudencia desplegadas por el licenciado Roldán en el manejo del asunto que la querellante le delegó son conductas inaceptables, proscritas por el Canon 18 del Código de Ética Profesional y que se apartan de lo que debe ser una representación legal adecuada.

## B. *Canon 19*

Una vez se le contrata, el Canon 19 impone al abogado el deber de sostener una comunicación directa y efectiva con el cliente sobre la gestión y el estado de su caso. Según quedó establecido, luego de la segunda reunión en septiembre de 2009 —en la cual recibió el dinero— el licenciado Roldán se desentendió del asunto y no volvió a intercambiar información alguna con la señora Nieves, pese a la insistencia de esta última de conocer sobre el progreso de su reclamación. El propio querellado reconoce que, contrario a lo que exige el Canon 19, delegó la comunicación y el seguimiento de todos los asuntos al personal de apoyo de su oficina. Reiteramos que esta obligación ética es personal e indelegable, por lo cual no podía descansar en otros y, mucho menos, encomendarle al personal clerical suplir el tipo de información requerida por la clienta.[11]

El querellado defendió su proceder alegando lo siguiente:

> Una lectura del Informe del Comisionado tiende a dar la impresión de que era obligación del licenciado Roldán González contestar todas y cada una de las llamadas que hiciera a su oficina la señora Nieves Ramírez. Y, siempre estar disponible en la oficina para atenderla. La realidad es que los servicios profesionales en los pueblos de la isla no funcionan así. Escrito

---

[11] De todos modos, tampoco ese personal pudo proveerle a la señora Nieves dato alguno pertinente al asunto.

fijando posición en cuanto al informe del señor Comisionado Especial, pág. 13.[12]

Si bien es cierto que un abogado no está obligado a dar seguimiento directo a todo requerimiento que haga su representado sobre la gestión que le ha sido delegada, la realidad es que la información que intimó la señora Nieves no era irrelevante. Por otra parte, ella tenía derecho a conocer de parte del licenciado Roldán cuál era el estatus y progreso de su reclamación.[13] De los hechos surge claramente que el querellado se tornó inaccesible; nunca le dio cita de seguimiento y no le devolvió tan siquiera una llamada.

Asimismo, es importante destacar que el licenciado Roldán no le explicó a la señora Nieves el funcionamiento interno de su oficina. Recordemos que no es hasta marzo de 2010 cuando la señora Nieves se presenta a las facilidades del bufete del querellado —y finalmente la atienden— que se entera por primera vez que debía discutir los pormenores de su caso con otro abogado. El licenciado Roldán no le advirtió que había delegado el asunto a uno de sus empleados. Este proceder negligente, sin contar con el consentimiento informado de la clienta, igualmente infringe el Canon 19 del Código de Ética Profesional.

Todo lo anterior provocó un estado de desconfianza y decepción en la clienta, lo cual se hubiese evitado si el abogado hubiese mantenido desde un principio una comunicación directa y efectiva con ella, conforme lo exige el Canon 19.

---

[12] Contrario a lo que plantea el querellado, una comunicación directa y efectiva no implica estar presente en la oficina para atender todo reclamo de información que haga el cliente. El Canon 19 del Código de Ética Profesional, 4 LPRA Ap. IX (Canon 19), le requiere responder oportunamente a las solicitudes razonables de información. En las circunstancias de este caso, dado a que su personal estaba al tanto de la preocupación de la clienta, el licenciado Roldán debía, como mínimo, llamarla, ofrecerle una cita o realizar cualquier otra diligencia para lidiar con la preocupación de la señora Nieves.

[13] Como bien consigna el Comisionado en su informe, el querellado no volvió a comunicarse en forma alguna con la señora Nieves, ya fuese para indicarle sobre las gestiones realizadas en el análisis del caso, ya sobre la preparación para su tramitación o ya para requerirle información adicional u orientarle sobre sus nuevas perspectivas legales.

## C. *Sanción disciplinaria*

Ahora solo nos resta determinar la sanción disciplinaria que se le impondrá al abogado.[14] Entendemos que el licenciado Roldán actuó correctamente al devolverle a la señora Nieves la suma de dinero que ésta le adelantara por los gastos de un litigio que nunca se concretó. No obstante, esperó a que la querellante presentara una queja para entonces proceder al rembolso, a pesar de conocer que su clienta no contaba con el dinero y lo había tomado prestado.[15]

Surge de sus comparecencias ante esta Curia que el *licenciado Roldán no reconoce sus faltas éticas*. Tanto así, que entiende que actuó correctamente en la asesoría y gestión del asunto delegado por la señora Nieves. Así aparece diáfanamente plasmado en cada una de sus alegaciones.

Cabe destacar que, según surge de la propia queja, la clienta estaba confrontando una situación personal y económica difícil, luego de haberse rescindido el contrato de la Corporación con la ADSEFDF y, más adelante, ser procesada criminalmente. Ante ese escenario, tuvo que enfrentar la desatención del licenciado Roldán González quien, una vez cobró el dinero, abandonó el asunto que se le había

---

[14] El Comisionado Especial no recomendó específicamente sobre la sanción que se debe imponer al querellado. Un estudio de la jurisprudencia más reciente revela lo siguiente:

1. *Suspendimos tres meses* a una letrada que, en lo pertinente, violó los Cánones 9, 12, *18*, 20 y 38 del Código de Ética Profesional, 4 LPRA Ap. IX (Cánones 9, 12, 18, 20 y 38). *In re Villalba Ojeda*, 193 DPR 966 (2015).

2. *Suspendimos por tres meses* a un letrado del ejercicio de la abogacía, arrepentido y *sin historial disciplinario*, por apartarse de los Cánones 12, *18, 19* y 38. *In re Miranda Daleccio*, 193 DPR 753 (2015).

3. *Censuramos enérgicamente* a un abogado que *aceptó* haber quebrantado los Cánones *18, 19*, 20 y 38. *In re Rivera Nazario*, 193 DPR 573 (2015). *Esta era la primera falta del letrado en poco más de dos décadas.* Íd.

4. Por infringir los Cánones *18* y *19 censuramos enérgicamente* a un abogado y le ordenamos que le restituyera a su clienta $500. *In re Santos Cruz*, 193 DPR 224 (2015). Consideramos su buena reputación profesional y la *falta de antecedentes disciplinarios.* Íd.

5. Por infringir los Cánones 12, *18* y *19, suspendimos por tres meses* a un abogado. *In re Arroyo Rivera*, 148 DPR 354 (1999). Ésta constituía su *primera falta* y había resarcido a su cliente. Íd.

[15] Recordemos que la señora Nieves había requerido el rembolso al licenciado López en junio de 2010.

confiado, apartándose de los estándares mínimos de conducta que establece nuestra reglamentación ético-profesional. El hecho de que la señora Nieves aún pueda tener una reclamación vigente no justifica la dilación del abogado en atender el asunto.

Finalmente, no podemos pasar por alto que en el expediente del licenciado Roldán constan antecedentes de procesos disciplinarios. *Su ejecutoria profesional de sobre 40 años ha sido objeto de varios señalamientos.* En particular, en el asunto CP-2006-0025, por unos acontecimientos similares a los aquí relatados, el 30 de julio de 2009 ordenamos su archivo no sin antes advertirle que, en lo sucesivo, debía ser más diligente en sus gestiones profesionales o, de lo contrario, estaría expuesto a sanciones disciplinarias mayores.[16] *El querellado estaba apercibido de que, de repetirse su conducta antiética, nos obligaría a intervenir con mayor severidad.*

## IV

En vista de lo anterior, *decretamos la suspensión inmediata del Lcdo. Israel Roldán González del ejercicio de la*

---

[16] Conforme los hechos que surgen de la Querella en el asunto CP-2006-0025, la señora Mary Ann Irizarry Abreu (señora Irizarry) expresó que el 23 de diciembre de 2002 fue a la oficina del licenciado Roldán en busca de asesoría legal. Interesaba presentar una demanda en daños y perjuicios por un supuesto allanamiento ilegal de su residencia efectuado por unos miembros de la Policía de Puerto Rico. El querellado opinó que era más conveniente presentar esa acción ante el foro federal. El 17 de enero de 2003, la señora Irizarry le adelantó $5,000, así como los documentos pertinentes. El abogado no presentó la acción y el 16 de agosto de 2005 le devolvió el dinero, alegando que ella no tenía un buen caso. Ya para ese entonces, el término prescriptivo para incoar la reclamación había transcurrido.

Ambos llegaron a un acuerdo, mediante el cual el querellado, sin aceptar los hechos, resarció a la señora Irizarry. Así las cosas, considerado el Informe de la Comisionada Especial, ordenamos el archivo del CP-2006-0025, con el debido apercibimiento, mediante Resolución de 30 de julio de 2009.

Por otro lado, siendo representante legal por contrato de la Asamblea Municipal del pueblo de Aguadilla, representó a ciertos ciudadanos en pleitos contra ese mismo municipio, lo que constituyó una conducta opuesta al Canon 21 del Código de Ética Profesional, 4 LPRA Ap. IX. *In re Roldán González*, 113 DPR 238 (1982). En ese asunto también le advertimos que en el futuro debía ser más escrupuloso en el ejercicio de la profesión legal. Íd.

*abogacía y de la notaría por un periodo de 90 días contados a partir de la notificación de esta Opinión "per curiam" y Sentencia. Le ordenamos notificar a todos sus clientes de su inhabilidad para continuar representándolos y devolverles tanto los expedientes de los casos pendientes como los honorarios recibidos por trabajos no rendidos, así como informar oportunamente de su suspensión a los distintos foros judiciales y administrativos en los que tenga algún asunto pendiente. Además, deberá acreditar y certificar a este Tribunal el cumplimiento con lo anterior dentro del término de treinta días a partir de la notificación de esta Opinión "per curiam" y Sentencia. Por su parte, se ordena al Alguacil de este Tribunal a que incaute inmediatamente la obra y el sello notarial del Lcdo. Israel Roldán González y los entregue al Director de la Oficina de Inspección de Notarías para el correspondiente examen e informe. Notifíquese personalmente esta Opinión "per curiam" y Sentencia al Lcdo. Israel Roldán González a través de la Oficina del Alguacil de este Tribunal.*

*Se dictará Sentencia de conformidad.*

El Juez Asociado Señor Kolthoff Caraballo no intervino.