EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| In re:

Lcda. Melissa Rivera Contreras | 2019 TSPR 56

202 DPR ____ |

Número del Caso: CP-2017-15

Fecha: 28 de marzo de 2019

Oficina del Procurador General:

Lcdo. Joseph Feldstein Del Valle
Subprocurador General

Lcda. Minnie H. Rodríguez López
Procuradora General Auxiliar

Abogado del Querellado:

Lcdo. Manuel San Juan

Materia: Conducta Profesional – Censura enérgica por violación a los Cánones 17, 18, 20 y 23 del Código de Ética Profesional.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

|  |  |  |
|---|---|---|
| *In re:*<br><br>Lcda. Melissa Rivera Contreras | **Núm.** CP-2017-15 |  |

*PER CURIAM*

En San Juan, Puerto Rico, a 28 de marzo de 2019.

En esta ocasión, nos corresponde determinar si las actuaciones de la abogada de epígrafe durante la tramitación de un procedimiento de inmigración en el estado de la Florida constituyen una violación al Código de Ética Profesional de Puerto Rico, 4 LPRA Ap. IX.

**I**

El 25 de noviembre de 2015, el Sr. Ricardo J. Benavidez Montenegro (promovente) presentó una Queja ante este Tribunal en contra de la Lcda. Melissa Rivera Contreras[1] por razón de un presunto desempeño profesional deficiente en el caso de inmigración para el que la había contratado. En síntesis, el Promovente, oriundo de Nicaragua, sostiene que la abogada de epígrafe: (1) le hizo firmar unos documentos sin permitir que los leyera; (2) no le entregó copia del expediente cuando se le solicitó, y (3) le brindó asesoramiento legal incompleto y equivocado. Veamos la situación de hechos que dio lugar al presente procedimiento disciplinario en contra de la

---

[1] Ésta fue admitida a la profesión de la abogacía el 21 de agosto de 2012.

licenciada Rivera Contreras, según detallados en la Querella (CP-2017-15) e *Informe de la Procuradora General* (*Informe*).

## A.

El 17 de enero de 2015, el señor Benavidez Montenegro acudió a las oficinas de la licenciada Rivera Contreras en búsqueda de asesoramiento legal con relación al caso de deportación (remoción) que existía en su contra. Según relata en la Queja, éste presentó el siguiente cuadro fáctico a la abogada de epígrafe: en el 2014 unos oficiales de inmigración lo detuvieron y le solicitaron los documentos relacionados con su estatus de inmigración en los Estados Unidos y, al no tenerlos disponibles, se inició un proceso de remoción en su contra. Inicialmente, tras consultar distintas páginas webs que explicaban dicho proceso, el señor Benavidez Montenegro presentó, a través de su esposa y ante las autoridades correspondientes, un Formulario I-130 (*Petición de Familiar Extranjero*).[2] Según explicó, este formulario, conocido comúnmente como un proceso de "Perdón", permite que personas que entran ilegalmente a Estados Unidos puedan obtener una "exención provisional" al demostrar que su deportación acarrea un gran perjuicio para su familia. Para prevalecer en este proceso, la persona interesada en iniciarlo no puede tener un caso de remoción activo ante el Tribunal de Estados

---

[2] Véase *I-130, Petición de Familiar Extranjero*, U.S. Citizenship and Immigration Services, https://www.uscis.gov/es/formularios/i-130 (última visita 31 de enero de 2019).

Unidos de Inmigración.[3] El Promovente relata, además, que su Formulario I-130 fue acogido por las autoridades de inmigración y deseaba contratar los servicios legales de un abogado para tramitar el cierre del caso.

Durante la reunión inicial, el Promovente firmó un contrato de servicios profesionales con la licenciada Rivera Contreras en el que acordaron cerrar su caso de remoción. La letrada indicó al señor Benavidez Montenegro que, como parte de su política de oficina, tenía que pagar de antemano la totalidad de los honorarios: dos mil trescientos treinta dólares ($2,330.00). El Promovente entregó a la letrada todos los documentos relacionados con su caso y ésta le aseguró que eran suficientes para tramitar lo solicitado. El señor Benavidez Montenegro alega que, durante esa primera reunión, le solicitó una copia de los documentos que iba a presentar ante el tribunal, pero que la letrada nunca se la entregó. En su lugar, sólo envió las dos (2) páginas de la moción que el señor Benavidez Montenegro debía firmar.

Posterior a dicha reunión, el Promovente relata que completó el Formulario I-824 (*Solicitud de Acción en una Solicitud o Petición Aprobada*) para transferir la aprobación del Formulario I-130 al Centro Nacional de Visas (NVC, por sus siglas en inglés) y así obtener el "Perdón". El 28 de abril de 2015 se aprobó el cierre de su caso de remoción y

---

[3] Véase *Exención Provisional por Presencia Ilegal*, U.S. Citizenship and Immigration Services, https://www.uscis.gov/es/exencionprovisional (última visita 31 de enero de 2019).

con ello culminó la primera gestión para la cual contrató a la licenciada Rivera Contreras.

Así las cosas, el 8 de mayo de 2015, la abogada de epígrafe envío un mensaje de texto al Promovente para indagar si quería obtener un permiso de trabajo, mediante la presentación del Formulario I-76 (*Solicitud de Autorización de Empleo*), ya que su caso de remoción se había cerrado. Le indicó, además, que dicha gestión tenía un costo de mil doscientos dólares ($1,200.00) más los gastos de inmigración. No obstante, le manifestó que, si la contrataba para el trámite de "Perdón", le daría un descuento de cuatrocientos dólares ($400.00) por lo que el permiso de trabajo tendría un costo final de ochocientos dólares ($800.00). En respuesta a esto, el señor Benavidez Montenegro preguntó a la letrada si había atendido previamente, y le habían sido aprobados, casos de permisos de trabajo bajo las mismas circunstancias que las suyas. Ésta contestó en la afirmativa.

Paso seguido, el 16 de mayo de 2015, el Promovente y la abogada de epígrafe se reunieron por segunda ocasión para discutir lo conversado por mensaje de texto. Durante la reunión, el señor Benavidez Montenegro comunicó a la licenciada Rivera Contreras que no tenía la totalidad del dinero, ni los documentos necesarios para tramitar el "Perdón" y que su caso aún no había sido transferido al NVC. Por razón de ello, el Promovente sostiene que las partes acordaron -como única gestión- tramitar el permiso de trabajo. En la Queja, éste manifestó que en dicho momento la

letrada no quiso discutir cómo se iba manejar el balance adeudado por los trámites anteriores. Así pues, el señor Benavidez Montenegro firmó el contrato y pagó a la licenciada Rivera Contreras un total de dos mil cuatrocientos dólares ($2,400.00).[4]

El 1 de junio de 2015, la abogada de epígrafe envió por correo electrónico al Promovente una solicitud de autorización de empleo (Formulario I-765), una notificación sobre comparecencia como abogada (Formulario G-28) y una hoja de información biográfica (Formulario G-325).[5] Al recibir estos documentos, el señor Benavidez Montenegro se percató que la solicitud para la autorización de empleo marcaba la categoría de "ajuste de estatus"; sin embargo, expresó a la letrada que nunca había solicitado un "ajuste de estatus" porque no podía llevar a cabo dicho procedimiento al haber entrado ilegalmente a Estados Unidos. Asimismo, éste le indicó que, para solicitar bajo esa categoría, primero tenía que recibir la aprobación del "Perdón" y luego culminar el trámite de residencia a través de la vía consular en Nicaragua. En respuesta a ello, tanto la licenciada Rivera Contreras como su asistente administrativa le indicaron que

---

[4] Del expediente surge que, conforme al contrato firmado entre las partes, los honorarios para el trámite de la solicitud de autorización de empleo y el "Perdón" tenían un valor de cuatro mil ochocientos dólares ($4,800.00) de los cuales se entregaría un primer pago de dos mil cuatrocientos dólares ($2,400.00).

[5] Véase, por ejemplo, *I-765, Solicitud de Autorización de Empleo*, U.S. Citizenship and Immigration Services, https://www.uscis.gov/es/formularios/i-765 (última visita 31 de enero de 2019).

la categoría de "ajuste de estatus" estaba correcta. El señor Benavidez Montenegro confió en la letrada, firmó la solicitud y entregó un cheque por cuatrocientos sesenta y cinco dólares ($465.00) pagaderos al Departamento de Seguridad Nacional (*United States Department of Homeland Security*, DHS por sus siglas en inglés).

El 4 de junio de 2015, el Promovente escribió un mensaje a la letrada para dar seguimiento a los asuntos pendientes. En ese momento, ésta le informó que la solicitud no había sido enviada porque faltaba una carta. En relación con el mismo asunto, el 16 de junio de 2015, la licenciada Rivera Contreras envió un mensaje de texto al señor Benavidez Montenegro en el que indicó que hubo un problema con el cheque enviado a DHS y que se comunicara de inmediato con ella. Ante tal información, el Promovente abrió su correo electrónico y encontró un mensaje titulado *Rejection of Notice* en el que se le notificaba que la solicitud había sido rechazada porque el monto del dinero enviado era incorrecto y, a su vez, le requerían anejar a su solicitud prueba en torno a su "ajuste de estatus".

Luego de conversar con la licenciada Rivera Contreras, ésta reconoció su "error clerical" [sic] e indicó al Promovente que, para subsanar las deficiencias, sólo necesitaba un cheque nuevo con la cantidad correcta, un formulario actualizado con la categoría correcta (C-18, *Inmigrantes indocumentados que han recibido una orden final de expulsión y deportación*) y acompañarlo con una carta

indicando por qué necesitaba una autorización de empleo. El señor Benavidez Montenegro preguntó a la letrada si le habían aprobado una solicitud bajo la categoría C-18 en un caso similar al suyo. La abogada de epígrafe contestó en la afirmativa. Una vez más, el Promovente confió en la letrada, firmó el formulario y, algunos días más tarde, entregó los demás documentos solicitados.

El 16 de septiembre de 2015, el señor Benavidez Montenegro recibió una carta de DHS en la que le requería enviar, conforme a la categoría C-18, una copia de la Orden Final de Deportación y la Orden de Supervisión y que debía estar en cumplimiento con los informes de supervisión. Todo esto tenía que ser entregado en un término no mayor de ochenta y siete (87) días. Sorprendido con la misiva, el Promovente consultó la página web de DHS y revisó las instrucciones para una solicitud de autorización de empleo (Formulario I-765) y constató que los documentos que ahora requería la agencia federal, presuntamente, eran necesarios para ser elegible bajo la categoría C-18.

Ante cuestionamientos por parte del señor Benavidez Montenegro sobre por qué recomendó enviar la solicitud bajo la categoría de C-18, la licenciada Rivera Contreras señaló que lo indicado en las instrucciones del Formulario I-765 no constituían requisitos mandatorios y que le habían aprobado esas solicitudes en casos anteriores y similares al suyo. El señor Benavidez Montenegro requirió ver los expedientes de los casos a los cuales hacía alusión, pero la letrada se

negó.[6] No obstante, le recomendó los siguientes cursos de acción: abandonar la solicitud de autorización de empleo o pagarle mil quinientos dólares ($1,500.00) para responder la carta que le había cursado DHS. Antes de tomar una decisión sobre el particular, el Promovente inquirió sobre por qué no le había informado sobre la necesidad de los documentos que ahora le solicitaban. A esto, según la Queja, la letrada respondió que no podía estar explicando todo a sus clientes.

A la luz de este incidente, el Promovente cursó una carta por correo certificado y correo electrónico a la abogada de epígrafe mediante la cual reiteró su frustración con todo el proceso e informó que no iba a iniciar el proceso de "Perdón" bajo su representación legal. Asimismo, y como parte de su solicitud de renuncia, éste requirió la devolución del dinero entregado por razón del primer pago para dicho trámite. Mediante correo electrónico, el 17 de septiembre de 2015, la licenciada Rivera Contreras se negó a devolver el dinero pagado, ya que, conforme a su política de oficina, no existía la posibilidad de reembolso para un incumplimiento contractual sin causa. Al día siguiente, el Promovente le solicitó una copia de su expediente, los contratos de servicio profesionales que habían suscrito y la factura por los trabajos realizados. Estos intentos resultaron infructuosos.

---

[6] De hecho, surge de la Queja, que la licenciada Rivera Contreras presuntamente indicó al Promovente que si le entregaba copia de los casos anteriores éste no iba a necesitar sus servicios y simplemente se los iba a copiar.

Ante la negativa de la letrada en entregar el expediente y demás documentos solicitados, el 1 de octubre de 2015, la nueva representación legal del señor Benavidez Montenegro cursó una carta, por correo certificado y correo electrónico, en la que reiteró el pedido de su cliente. Una vez más, estos intentos fueron fallidos ya que la licenciada Rivera Contreras manifestó que el Promovente ya tenía copia de los contratos que habían suscrito.

El señor Benavidez Montenegro relató en la Queja que, además de contratar a una abogada para obtener el expediente, decidió buscar asesoramiento legal nuevo en relación con su caso de inmigración. Tras contratar los servicios de la Lcda. Grisel Ybarra y la Lcda. Linda Osberg-Braum, éstas le asesoraron sobre varios asuntos que, a su entender, contradecían los consejos legales provistos por la licenciada Rivera Contreras. En primer lugar, le indicaron que no tenía ninguna posibilidad de ser elegible para una solicitud de autorización de empleo dado que, al haberse cerrado su caso de remoción, no cumplía con los requisitos establecidos para la categoría C-18. De otra parte, le indicaron que el proceso de "Perdón" es uno sumamente delicado y el cual requiere comunicación constante y efectiva entre el cliente y el abogado sobre los distintos cursos de acción disponibles, según la situación particular del caso.[7]

---

[7] Posterior a la presentación de la Queja, el señor Benavidez Montenegro envió a este Foro una opinión legal suscrita por la licenciada Osberg-Braum para apoyar su contención sobre el asesoramiento legal deficiente brindado por la licenciada Rivera Contreras.

Por último debemos señalar que, a lo largo de la Queja, el señor Benavidez Montenegro sugiere que la abogada de epígrafe contravino los siguientes cánones del Código de Ética Profesional: Canon 18 (Competencia del abogado y consejo al cliente), Canon 19 (Información al cliente), Canon 24 (Fijación de honorarios), Canon 26 (Derechos y limitaciones en relación con clientes) y Canon 35 (Sinceridad y honradez), 4 LPRA Ap. IX, C. 18, C. 19, C. 24, C. 26 y C. 35.

**B.**

El 2 de diciembre de 2015, la Secretaría de este Tribunal informó a la licenciada Rivera Contreras sobre la Queja presentada en su contra y le indicó que podía someter un escrito en contestación. Así las cosas, este Tribunal recibió la contestación por parte de la abogada de epígrafe, el 21 de enero de 2016.

En síntesis, la letrada relató su versión de los hechos presentados en la Queja y solicitó que se desestimara por ser inmeritoria. Conviene resaltar algunas de las alegaciones y los argumentos esbozados por la licenciada Rivera Contreras en dicho escrito. Con relación al caso de remoción que tenía pendiente el Promovente, afirmó que usualmente los fiscales no acceden a cerrarlos previo a la celebración de una vista inicial de estatus, pero que su grupo de trabajo y ella realizaron esfuerzos adicionales para obtener el cierre solicitado. Asimismo, la letrada adujo que el señor Benavidez Montenegro se contradice en la Queja cuando alega que no se

le entregó ninguna copia del expediente, más sin embargo los anejos que la acompañan demuestran lo contrario. Sostiene que sí le proveyó copia del expediente mientras se llevaban a cabo las distintas gestiones y que no tenía reparo en proveer copias nuevas, siempre y cuando se pagaran los costos de reproducción.

De otra parte, en cuanto a los contratos de servicios profesionales, alega que resulta incorrecto la aseveración de que habían acordado no trabajar el proceso de "Perdón". En atención a ello, detalla que trabajó más de siete (7) horas en el caso del Promovente en las que leyó y analizó la documentación entregada. Durante este tiempo, alega que organizó varios anejos y llevó a cabo el inicio de la investigación legal. Sobre la devolución de los honorarios y las políticas de su oficina, puntualizó que es incorrecto señalar que no se comienzan los trabajos hasta que se salde la totalidad del dinero pactado; sino que se trabajan las horas que el cliente paga. Asimismo, sostuvo que en cuestiones ante los tribunales no puede ofrecer la posibilidad de un plan de pago porque se requiere la presentación de documentos.

Por último, en los méritos del caso de inmigración del señor Benavidez Montenegro, la licenciada Rivera Contreras reconoció y se excusó por cometer un error oficinesco al presentar el Formulario I-765, bajo la categoría C-18 y no la C-14. Sin embargo, en torno a las opiniones legales sometidas por el Promovente y suscritas por su representación legal nueva, la abogada de epígrafe se reiteró en su criterio

inicial de que éste podía ser elegible tanto para el proceso de "Perdón" como para la autorización de empleo. Adujo que siempre cumplió con su deber ético y fiduciario para con su cliente al mantenerlo informado de todo. Apuntó que el error oficinesco cometido no causó la revocación del caso ni la perdida de ningún derecho.

Surge del expediente que, el 22 de enero de 2016, este Tribunal recibió una carta suscrita por el señor Benavidez Montenegro mediante la cual reaccionó a la contestación de la abogada de epígrafe a la Queja presentada. Conviene destacar que, en dicha misiva, el Promovente informó que había presentado una demanda civil por impericia profesional, enriquecimiento injusto e incumplimiento contractual en contra de la licenciada Rivera Contreras.

Así las cosas, el 4 de mayo de 2016, se refirió el presente caso a la Oficina de la Procuradora General para la presentación del correspondiente *Informe*. El 15 de julio de 2016, dicha Oficina presentó su *Informe*. En cuanto al trámite procesal, debemos señalar que del *Informe* surge que la abogada de epígrafe presentó prueba indicando que la demanda civil incoada en su contra había sido desestimada con perjuicio. De otra parte, también se desprende del expediente, que el Promovente envió una comunicación en la que relató que -estando programado el juicio en el pelito de impericia profesional- la licenciada Rivera Contreras, mediante su representante legal, ofreció pagar cinco mil dólares ($5,000.00) para que se desistiera del mismo con

perjuicio. El señor Benavidez Montenegro señala que aceptó desestimar la demanda provisto que pudo recuperar su dinero.

Tras analizar el cuadro fáctico del presente caso, así como la jurisprudencia aplicable, la Oficina de la Procuradora General concluyó que la licenciada Rivera Contreras podía haber infringido los cánones 18, 20, 23 y 38 de Cánones de Ética Profesional, 4 LPRA Ap. IX, C. 18, C. 20, C. 23 y C. 38.[8] En específico, el *Informe* concluyó que la letrada incurrió en conducta contraria al Canon 18 al no haber ejercido el cuidado y la diligencia necesaria en la tramitación de la solicitud del permiso de trabajo del señor Benavidez Montenegro. De igual forma, razonó que la negativa de la abogada de epígrafe en suplir al Promovente un desglose de las horas trabajadas en los asuntos encomendados, según solicitado, constituyó una violación al Canon 23. En cuanto al Canon 20, la Oficina de la Procuradora General resolvió que al no hacer entrega del expediente solicitado contravino dicho precepto ético. Por último, las actuaciones desplegadas y detalladas en la Queja demostraron que, en su conjunto, la licenciada Rivera Contreras no actuó de manera tal que

---

[8] Del *Informe* surge una imputación en torno al Canon 35, pero la Oficina de la Procuradora General sólo señaló que las actuaciones de la abogada de epígrafe, al presuntamente guardar silencio ante este Foro sobre ciertos aspectos de la demanda civil incoada en su contra, podían constituir una violación a dicho precepto ético. Este apercibimiento se limitó a recomendar a la letrada a que ejerza mayor cuidado al momento de conducirse frente a los tribunales. De igual forma, en la parte dispositiva del *Informe*, se imputa a la letrada una posible violación al Canon 17, más, sin embargo, no hubo ninguna discusión sustantiva del mismo.

exaltara la profesión legal y, por ende, incurrió en conducta impropia y contraria al deber impuesto por el Canon 38.

El 13 de septiembre de 2016, luego de varios trámites procesales, la licenciada Rivera Contreras presentó un escrito titulado, *Contestación al Informe de la Procuradora General*. En éste, reiteró la mayoría de los argumentos esbozados en su contestación inicial a la Queja. En resumen, la letrada: (1) se disculpó por el denominado error oficinesco al marcar la categoría equivocada en la solicitud de autorización de empleo; (2) sostuvo que, en efecto, había presentado prueba ante este Tribunal y la Oficina de la Procuradora General sobre las horas de trabajo realizadas y que envió copias del expediente al señor Benavidez Montenegro; (3) afirmó que la transacción en la demanda civil por impericia profesional, no implicaba una admisión por su parte de incumplimiento contractual por servicios profesionales, y (4) subrayó que la insatisfacción del cliente con los servicios prestados no constituía una falta ética que atente contra la dignidad de la profesión legal.

Así las cosas, el 24 de febrero de 2017, este Tribunal ordenó a la Procuradora General presentar una Querella en contra de la licenciada Rivera Contreras. El 6 de julio de 2017, la Oficina del Procurador General presentó la Querella (CP-2017-15) en la que formuló seis (6) cargos por violaciones a los cánones 17, 18, 20, 23, 35 y 38 del Código de Ética Profesional.

El 18 de septiembre de 2018, la abogada de epígrafe presentó un escrito titulado *Contestación a la Querella de la Procuradora General*. Mediante ésta, la licenciada Rivera Contreras aceptó todos los cargos formulados, con excepción del cargo por infringir el Canon 35. Sobre éste, la letrada sostuvo que en ningún momento tuvo la intención de faltar a su deber de sinceridad y honradez. En específico, recalcó que desde un principio presentó prueba a este Tribunal y a la Oficina del Procurador General que evidenciaban que el pleito civil por impericia profesional había concluido a través de un acuerdo transaccional. Es decir, enfatizó que nunca había ocultado información a este Tribunal con relación a la culminación de dicha demanda. Por último, la licenciada Rivera Contreras señaló los siguientes factores atenuantes para ser considerados al momento de imponer una sanción disciplinaria: (1) que ha aceptado su responsabilidad y expresado un profundo arrepentimiento por sus errores; (2) que ha resarcido al señor Benavidez Montenegro luego del acuerdo de transacción y que los derechos de éste no se vieron perjudicados; (3) que goza de buena reputación en su comunidad y no tiene historial de faltas previas, y (4) que la conducta objeto de la Querella fue una aislada, producto de la inexperiencia.

Luego de esta comparecencia, el 6 de marzo de 2018, el presente caso quedó sometido. Con el beneficio de los escritos de todas las partes, estamos en posición de adjudicar la Querella ante nuestra consideración.

## II.

Este Foro tiene la responsabilidad, como parte de su poder inherente para regular la profesión legal en Puerto Rico, de asegurar que los miembros admitidos al ejercicio de la abogacía desplieguen sus funciones de manera responsable, competente y diligente. En este sentido, conviene reiterar que nuestra función disciplinaria se extiende a actos cometidos por un abogado o una abogada fuera de la jurisdicción del Estado Libre Asociado de Puerto Rico. Véase *In re Reichard Hernández*, 180 DPR 604 (2011).

En atención a ello, recordemos que el Canon 17 establece, entre otras cosas, que la comparecencia de un abogado ante los tribunales equivale a una afirmación sobre su honor de que, a su juicio, el caso de su cliente es digno de un remedio judicial. *In re Irizarry*, 193 DPR 633, 664 (2015); *In re Guzmán*, 181 DPR 495, 509 (2011). Este Tribunal ha resuelto que infringe este postulado ético el abogado o la abogada que durante el transcurso de un pleito quede persuadido de que el mismo es injustificado y no se lo informe al cliente, ni presente su renuncia formal para la consideración del foro judicial correspondiente. *In re Flores Ayffán* I, 170 DPR 126 (2007). Véase además, *In re Guemárez Santiago*, 191 DPR 611 (2014).

Por su parte, el Canon 18, dispone, en lo pertinente, que: "[e]s deber del abogado defender los intereses del cliente diligentemente, desplegando en cada caso su más profundo saber y habilidad y actuando en aquella forma que

la profesión jurídica en general estima adecuada y responsable". Canon 18, *supra*. De acuerdo con esta norma, una vez se asume la representación legal de un cliente, es un deber ético llevar a cabo aquellas gestiones profesionales pertinentes a favor de sus intereses. *In re Feliciano Rodríguez*, 198 DPR 369, 382 (2017); *In re Morell Bergantiños*, 195 DPR 759, 763 (2016). Así pues, se exige que el abogado o abogada emplee toda su capacidad, lealtad, responsabilidad, efectividad y la más completa honradez. *In re Meléndez La Fontaine*, 167 DPR 111 (2006).

Este Foro ha reiterado que, "[c]uando se acepta la representación de un cliente y no se realizan posteriormente las gestiones profesionales adecuadas, se incumple irremediablemente con los postulados más básicos del Canon 18 del Código de Ética Profesional". *In re Cotto Luna*, 187 DPR 584, 589 (2012) (*citando a In re Pietri Castellón*, 185 DPR 982, 992 (2012)). Asimismo, hemos dispuesto que "aquella actuación negligente que pueda conllevar o, en efecto, conlleve la desestimación o el archivo de un caso, se configura violatoria del Canon 18". *In re Hoffman Mourino*, 170 DPR 968, 981 (2007).

De otro lado, conforme al Canon 20, una vez culmina la relación abogado-cliente, "[el] abogado debe hacerle entrega del expediente a su cliente y de todo documento relacionado con el caso y reembolsar inmediatamente cualquier cantidad adelantada que le haya sido pagada en honorarios por servicios que no se han prestado". Canon 20, *supra*. Cónsono con esto,

reiteramos que "la causa de acción y el expediente son exclusivos del cliente". *In re García Ortiz*, 187 DPR 507, 520 (2012). Véase además, *In re López Santiago*, 199 DPR 797, 814 (2018). Por lo que, "no debe haber dilación alguna en su entrega una vez el abogado concluye las gestiones para las cuales fue contratado o cuando el cliente solicita dicha entrega". *Id.* en la pág. 520.

De igual forma, el Canon 20 dispone que, cuando culmine la relación profesional, el abogado debe "reembolsar inmediatamente cualquier cantidad adelantada que le haya sido pagada en honorarios por servicios que no se han prestado". *In re Martí Rodríguez*, 194 DPR 467 (2016); *In re Pestaña Segovia*, 192 DPR 485 (2015). Anteriormente, al analizar dicho canon, hemos advertido que constituye una grave falta ética cuando un abogado o abogada retiene para sí dineros abonados por su cliente en calidad de honorarios sin realizar la labor para la cual fue contratado. Véase *In re Prado Galarza*, 195 DPR 894, 905-06 (2016).

Cónsono con estas exigencias del Canon 20, de otra parte, el Canon 23 requiere al abogado que ofrezca pronta cuenta del dinero u otros bienes del cliente y que no los mezcle con los propios. *In re Ríos Ríos*, 175 DPR 57 (2008). La acción de retener cualquier cantidad de dinero perteneciente a su cliente quebranta los postulados del Canon 23. *In re Rivera Lozada*, 176 DPR 215, 225 (2009). Más aún, el sólo hecho de que el letrado retenga fondos de un cliente justifica una sanción disciplinaria independientemente de si el abogado

devolvió tal dinero y que su retención haya sido sin la intención de apropiárselos. *In re Reyes Coreano*, 190 DPR 739, 755 (2014). Véase además, *In re Vega Quintana*, 188 DPR 536 (2013). Por ello, constituye un grave atentado a la relación fiduciaria entre abogado-cliente la retención de una suma de dinero que adelantó un cliente en concepto de honorarios sin realizar la gestión a la cual se comprometió. *In re Ayala Vega*, 189 DPR 672, 680 (2013).

Con relación al Canon 35 del Código de Ética Profesional, y en lo pertinente, éste impone a cualquier miembro de la profesión legal actuar con sinceridad y honradez ante los tribunales. Este deber de sinceridad es *erga omnes*. *In re Franco Rivera y Masini Soler*, 134 DPR 823 (1993). Los miembros de la profesión legal no pueden ofrecer información falsa o inducir a error a los tribunales, ya sea al proveer información que no se ajusta a la verdad u ocultando información que deba ser revelada. *In re Pons Fontana*, 182 DPR 300 (2011).

Por último, el Canon 38 establece que "el abogado deberá esforzarse, al máximo de su capacidad, en la exaltación del honor y dignidad de su profesión, aunque al así hacerlo conlleve sacrificios personales y debe evitar hasta la apariencia de conducta profesional impropia". Canon 38, *supra*. Así pues, hemos señalado que "por ser los abogados el espejo donde se refleja la imagen de la profesión, éstos deben actuar con el más escrupuloso sentido de responsabilidad que impone la función social que ejercen". *In re Guemárez*

*Santiago*, 191 DPR en la pág. 620. Véase además, *In re Otero Calero*, 2018 TSPR 112.

**III.**

En este caso, se le imputó a la licenciada Rivera Contreras infringir los cánones 17, 18, 20, 23, 35 y 38 del Código de Ética Profesional. Tras evaluar detenidamente los hechos ante nuestra consideración, así como el *Informe de Oficina de la Procuradora General* y los demás documentos que obran en el expediente, determinamos que ésta transgredió los cánones 17, 18, 20 y 23 más no los cánones 35 y 38.

Primeramente, la licenciada Rivera Contreras infringió el Canon 17 cuando presentó distintos formularios a nombre del Promovente que no cumplían con los requisitos legales establecidos para los hechos específicos que dieron lugar al caso de inmigración del señor Benavidez Montenegro. Con esta actuación la letrada laceró el honor que todo abogado y abogada debe demostrar cuando ejerce su criterio profesional y estima que el caso de su cliente es digno de un remedio judicial. Cónsono con lo anterior, la abogada de epígrafe también quebrantó el deber ético que le impone el Canon 18 de actuar con conocimiento y diligencia en los asuntos encomendados por su cliente. La licenciada Rivera Contreras no demostró el cuidado requerido por nuestro estado de Derecho en materia de Ética y Responsabilidad Profesional durante la tramitación de la solicitud de autorización de empleo del señor Benavidez Montenegro; aunque dicho desliz haya sido el resultado de un presunto error oficinesco. Asimismo, el

desempeño profesional falto que desplegó la letrada en cuanto al proceso de "Perdón" tuvo el efecto de dilatar innecesariamente la gestión acordada. El rechazo por parte de las autoridades federales de la solicitud de autorización de empleo, aunque posiblemente subsanable, bastó para que el Promovente -frustrado con la situación- culminara su relación profesional con la abogada de epígrafe. Esta actuación de displicencia mostrada por la licenciada Rivera Contreras no tiene cabida en la profesional legal en Puerto Rico.

De otra parte, la letrada violentó los preceptos éticos contenidos en los cánones 20 y 23 tras su negatoria inicial de hacer entrega al señor Benavidez Montenegro del expediente de su caso, una copia de los contratos de servicios profesionales suscritos, el desglose detallado de los servicios prestados y la suma de dinero entregada por las labores no completadas. En cuanto a la retención de honorarios, recalcamos que se justifica una sanción disciplinaria independientemente de si la licenciada Rivera Contreras haya resarcido tal dinero y que su retención haya sido sin la intención de apropiárselos. *In re Reyes Coreano*, 190 DPR 739 (2014). Resulta imperativo contextualizar el hecho de que, a no ser por la demanda civil incoada, aunque la misma haya culminado mediante un acuerdo de transacción, el Promovente no hubiese recobrado el dinero que adelantó a la letrada por las gestiones encomendadas que nunca se completaron.

Por último, sostenemos que la letrada no infringió los cánones 35 y 38 del Código de Ética Profesional. En cuanto al Canon 35, compartimos la postura asumida por la Procuradora General en su *Informe*. Aunque se le formuló un cargo por contravenir dicho precepto ético, estimamos que la letrada no tuvo la intención de inducir a error a este Foro ni a la Oficina del Procurador General cuando nos informó sobre el desenlace de la demanda civil presentada en su contra. De otra parte, por entender que las actuaciones de la licenciada Rivera Contreras constituyen violaciones a los Cánones 17, 18, 20 y 23 y son sancionables bajo éstos, consideramos superfluo, en esta ocasión, acudir al Canon 38 al imponer la medida disciplinaria correspondiente. Véase *In re Rodríguez Cora*, 193 DPR 447, 454 (2015).

## IV.

Como hemos expresado en reiteradas ocasiones, al momento de imponer la sanción disciplinaria a un abogado o una abogada que haya incurrido en conducta violatoria del Código de Ética Profesional evaluamos los siguientes factores: (1) la reputación del abogado en la comunidad; (2) su historial previo; (3) si es su primera falta; (4) si no ha causado perjuicio a alguna parte; (5) la aceptación de la falta y su arrepentimiento sincero; (6) la defensa frívola de su conducta; (7) si se trata de un incidente aislado; (8) si hubo ánimo de lucro, y (9) cualquier otra consideración agravante o atenuante aplicable a los hechos particulares del caso. Véase *In re Sharon Hernández López*, 197 DPR 340 (2017).

Al evaluar estos factores debemos señalar que: (1) a pesar de sus actuaciones en el presente caso, la letrada posee una buena reputación en el estado de la Florida y con sus demás clientes inmigrantes; (2) ésta constituye su primera falta ética; (3) los perjuicios causados al Promovente ya fueron subsanados; (4) desde sus escritos iniciales, aunque se defendió de las alegaciones imputadas en su contra, la abogada de epígrafe aceptó las faltas incurridas y demostró un arrepentimiento sincero y, (5) a la luz de su expediente personal, todo indica que se trata de un incidente aislado y que ocurrió durante los primeros dos (2) años desde que ingresó a la profesión legal en Puerto Rico.

Aplicados los criterios antes mencionados a los hechos del caso y evaluado el *Informe* presentado por la Procuradora General, concluimos que procede imponer como sanción una **censura enérgica** a la abogada de epígrafe. Se aconseja a la licenciada Rivera Contreras que ejerza mayor cuidado en el desempeño de su función profesional y, de otra parte, se le apercibe que en el futuro deberá acatar estrictamente los deberes deontológicos que impone el Código de Ética Profesional de Puerto Rico.

Se dictará Sentencia de conformidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

*In re*

Lcda. Melissa Rivera Contreras

**Núm.** CP-2017-15

SENTENCIA

San Juan, Puerto Rico, a 28 de marzo de 2019

Por los fundamentos expuestos en la Opinión *Per Curiam* que antecede, **se censura enérgicamente** a la Lcda. Melissa Rivera Contreras.

Se aconseja a la licenciada Rivera Contreras que ejerza mayor cuidado en el desempeño de su función profesional y, de otra parte, se le apercibe que en el futuro deberá acatar estrictamente los deberes deontológicos que impone el Código de Ética Profesional de Puerto Rico.

Notifíquese inmediatamente.

Publíquese.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. Los Jueces Asociados señor Estrella Martínez y señor Colón Pérez no intervinieron.

José Ignacio Campos Pérez
Secretario del Tribunal Supremo