EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| In re: | |
|---|---|
| Francisco Rádinson Pérez<br>Francisco Rádinson Caraballo<br>Sergio Rádinson Caraballo | 2020 TSPR 86<br><br>204 DPR \_\_\_\_\_ |

Número del Caso: CP-2017-17

Fecha: 23 de julio de 2020

Abogado de los Promovidos:

Por derecho propio

Oficina del Procurador General:

Lcda. Lorena Cortés Rivera
Subprocuradora General Interina

Lcdo. Joseph Feldstein Del Valle
Subprocurador General

Lcda. Yaizamarie Lugo Fontánez
Procuradora General Auxiliar

Lcda. Noemí Rivera de León
Procuradora General Auxiliar

Comisionada Especial:

Hon. Jeannette Ramos Buonomo

Materia: La suspensión del Lcdo. Francisco Rádinson Caraballo será efectiva el 19 de agosto, fecha en que se le notificó de su suspensión inmediata.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

*In re*:

| | | |
|---|---|---|
| Francisco Rádinson Pérez | CP-2017-17 | Conducta |
| Francisco Rádinson Caraballo | | Profesional |
| Sergio Rádinson Caraballo | | |

*PER CURIAM*

En San Juan, Puerto Rico, a 23 de julio de 2020.

En esta ocasión, nos corresponde ejercer nuestro poder disciplinario para evaluar la conducta de los Lcdos. Francisco Rádinson Pérez, Sergio Rádinson Caraballo y Francisco Rádinson Caraballo quienes, en el ejercicio de la profesión legal, se distanciaron del Canon 18 (Competencia del abogado y consejo al cliente). Específicamente, incumplieron con su deber de defender de manera diligente y adecuada los intereses de sus clientes al desconocer el derecho vigente aplicable a la emancipación de un menor de edad durante la tramitación de un caso de división de herencia ante el Tribunal de Primera Instancia.

Por los fundamentos que expondremos a continuación, censuramos enérgicamente la actuación de los Lcdos. Francisco Rádinson Pérez y Sergio Rádinson Caraballo. Además, decretamos la suspensión inmediata del Lcdo. Francisco Rádinson Caraballo del ejercicio de la abogacía por el término de un (1) mes. Esto, ya que la actuación de los letrados no fue cónsona con su obligación ineludible de realizar un estudio riguroso y continuo de la normativa legislativa, reglamentaria y jurisprudencial para mantener un alto grado de excelencia y competencia en la encomienda delegada por sus clientes. Una encomienda de naturaleza personalísima que forma parte de la vocación del abogado. Véase, S. Steidel Figueroa, *Ética para juristas: Ética del abogado y responsabilidad disciplinaria,* San Juan, Ed. Situm, 2016, sec. 6.03, pág. 358. Así, pasamos a examinar el trasfondo procesal que dio base al procedimiento disciplinario.

## I

### A. Trasfondo fáctico y procesal

Tras el fallecimiento del Sr. Manuel Monsegur Sanabria (causante o señor Monsegur Sanabria), los miembros de su sucesión compuesta por Manuel, Iván y Maritza de apellidos Monsegur Roche y el Sr. Manuel Alberto Monsegur González (sucesión o querellantes) contrataron los servicios profesionales del Lcdo. Miguel A. Montalvo Delgado y la Lcda. Evelyn J. García López para presentar una demanda de partición de herencia e *injunction* **(Caso Núm. ISCI2004-1931)**

en contra de la Sra. Haydee Franqui Sánchez (señora Franqui Sánchez), por sí y en representación del hijo menor del causante, Álvaro E. Monsegur Franqui (menor o Álvaro Monsegur)[1] el 20 de diciembre de 2004. En resumen, solicitaron la liquidación, división y adjudicación de los bienes de la herencia en cuanto al caudal del causante, ya que la posesión inmediata la ostentaba su viuda, la señora Franqui Sánchez.

El 3 de marzo de 2005, los Lcdos. Francisco Rádinson Pérez, Sergio Rádinson Caraballo y posteriormente, Francisco Rádinson Caraballo, todos socios del Bufete Rádinson & Rádinson (Bufete R & R) asumieron la representación legal de la señora Franqui Sánchez y del menor, y contestaron la demanda.

Por otro lado, **en mayo de 2005, el Lcdo. Francisco Rádinson Pérez asumió la representación legal de la señora Franqui Sánchez y el menor en un procedimiento de expropiación (Caso Núm. KEF2003-0026)** iniciado anteriormente por el causante en la Sala de Expropiaciones del Tribunal de Primera Instancia de San Juan en donde previamente se había dictado sentencia final el 30 de enero de 2004. Sin embargo, ante el fallecimiento del causante,

---

[1] Es meritorio destacar que al momento de la presentación de la demanda de la partición de la herencia del Sr. Manuel Monsegur Sanabria (causante o señor Monsegur Sanabria) (Caso Núm. ISCI2004-1931) en el 2004, su hijo menor de edad, Álvaro E. Monsegur Franqui (menor o Álvaro Monsegur) contaba con diecisiete (17) años.

el dinero se encontraba consignado en el Tribunal.[2]  Por dicha razón, como remedio para la aceptación y retiro del dinero consignado, **el 7 de octubre de 2006, se otorgó la *Escritura de emancipación Núm. 41*, ante el Lcdo. Francisco Rádinson Pérez quien la otorgó en capacidad de Notario. Mediante la referida escritura, la señora Franqui Sánchez, renunció a la patria potestad y custodia sobre los bienes y la persona de Álvaro Monsegur, quien para entonces contaba con diecinueve (19) años, y aceptó la emancipación.  Luego, el 23 de octubre de 2006, el Lcdo. Francisco Rádinson Pérez informó la referida emancipación en el caso de expropiación forzosa (Caso Núm. KEF2003-0026)** y solicitó el desembolso de la compensación que estaba consignada a favor de la sucesión del causante.[3]

**Posteriormente, las partes suscribieron un *Acuerdo de transacción y relevo* (Acuerdo) el 7 de mayo de 2007 en el caso de la partición de la herencia (Caso Núm. ISCI2004-1931), con el fin de dividir la herencia y terminar el pleito.[4]**  Este documento fue firmado por las partes y sus

---

[2]    Advertimos que en el 2003 la Sra. Haydee Franqui Sánchez (señora Franqui Sánchez) solicitó la emancipación judicial del menor (Caso Núm. ISFR2005-01290) para de este modo permitirle a su hijo retirar el dinero consignado en el caso de expropiación (Caso Núm. KEF2003-0026).  Ante la denegatoria a su petición por el Tribunal de Primera Instancia, la señora Franqui Sánchez recurrió al Tribunal de Apelaciones (KLAN2005001390) que confirmó al foro primario.

[3]    Resaltamos que no surge del expediente evidencia para establecer que la emancipación fuese notificada en el pleito relacionado con la partición de la herencia (Caso Núm. ISCI2004-1931).

[4]    En el Caso Núm. ISCI2004-1391, las partes son la sucesión del señor Monsegur Sanabria compuesta por Manuel, Iván y Maritza de apellidos Monsegur Roche y el Sr. Manuel Alberto Monsegur González (querellantes o sucesión), la señora Franqui Sánchez en su carácter personal y como representante del menor.

representantes legales, a saber, el licenciado Montalvo Delgado, y los querellados. No obstante, por entender que Álvaro Monsegur de diecinueve (19) años carecía de capacidad legal para consentir al Acuerdo, la señora Franqui Sánchez y Álvaro Monsegur se obligaron a tramitar una autorización judicial como parte del Acuerdo.

**En cumplimiento con lo anterior, el 7 de mayo de 2007, la señora Franqui Sánchez, representada por los querellados, presentó una petición de autorización judicial en el Tribunal de Primera Instancia (Caso Núm. ISRF2007-00697),[5]** con el fin de validar el Acuerdo efectuado entre las partes para que Álvaro Monsegur pudiera recibir las participaciones allí establecidas.

El 21 de septiembre de 2007, la licenciada García López envió una carta al Lcdo. Sergio Rádinson Caraballo en la que explicó que advino en conocimiento de la escritura de emancipación y solicitó que se le confirmara la existencia de la misma y si entonces, la autorización judicial dispuesta en el Acuerdo era necesaria.[6] Sin embargo, el Lcdo. Sergio Rádinson Caraballo nunca respondió.

Entretanto, Álvaro Monsegur cumplió veintiún (21) años en agosto del 2008, por lo que no se prosiguió con el trámite de la autorización judicial. Luego, el 14 de octubre de 2008, éste compareció ante el tribunal, representado por el

---

[5] La referida petición de autorización judicial (Caso Núm. ISRF2007-00697) fue consolidada con el caso de partición de herencia (Caso Núm. ISCI2004-1931).

[6] Apéndice de AB-2011-26 (Pieza 3), pág. 279.

Lcdo. Sergio Rádinson Caraballo para informar que ya había advenido a la mayoría de edad. Además, indicó que no deseaba ratificar el Acuerdo. Por ello, solicitó que se anulara el mismo, ya que al momento en que se suscribió no tenía capacidad para consentir.[7]

Mediante *Resolución* emitida el 30 de enero de 2009, el Tribunal de Primera Instancia declaró *con lugar* la solicitud de Álvaro Monsegur. Así, decretó la nulidad del Acuerdo, por falta del consentimiento de todas las partes y ordenó la continuación de los procedimientos ordinarios relativos a la partición de la herencia.[8]

El 13 de octubre de 2010, la representación legal de los querellantes expresó que el 5 de octubre de 2010, advinieron en conocimiento de la *Escritura de emancipación Núm. 41*. A base de ello, presentaron una *Moción de extrema urgencia solicitando relevo de resolución interlocutoria por fraude y para que se dicte sentencia de conformidad al contrato transaccional*. Mediante ésta solicitaron que se dejara sin efecto la *Resolución* del 30 de enero de 2009, que declaró nulo el Acuerdo, ya que el menor estaba emancipado al momento de su firma. Alegaron que los querellados ocultaron la emancipación intencionalmente por lo que cometieron fraude

---

[7]   Apéndice de AB-2011-26 (Pieza 3), pág. 59.

[8]   En desacuerdo, los miembros de la sucesión acudieron ante el Tribunal de Apelaciones que emitió *Sentencia* el 29 de abril de 2009 (KLCE090033) mediante la cual confirmó al foro primario. A su vez, presentaron un recurso de *certiorari* ante este Tribunal (CC-2009-0506) que fue declarado *no ha lugar*.

al tribunal. Asimismo, presentaron una *Moción solicitando descalificación de los tres Abogados que representan a la parte demandada y se eleven los autos al Tribunal Supremo de P.R. por conducta impropia*. En síntesis, solicitaron la descalificación inmediata de todos los abogados que ostentan la representación legal de la señora Franqui Sánchez y Álvaro Monsegur y que se elevaran los autos del caso ante este Tribunal para que se evaluara la acción disciplinaria correspondiente.

Por su parte, los letrados en oposición sostuvieron que el único fin de la escritura de emancipación era retirar el dinero consignado. Alegaron que la representación legal de la sucesión había sido negligente e irresponsable en la defensa de los mejores intereses de sus clientes por conocer sobre la emancipación desde antes, por lo que también solicitaron su descalificación. Por su parte, el Lcdo. Francisco Rádinson Pérez a través de una declaración jurada admitió que tenía responsabilidad completa del error, se responsabilizó y resaltó la falta de intención.

Tras evaluar lo anterior, **el 10 de noviembre de 2010, el Hon. Edwin Nieves Troche emitió una *Resolución y Orden* en la que descalificó al Lcdo. Francisco Rádinson Pérez,** como abogado en el pleito por entender que éste otorgó la *Escritura de emancipación Núm. 41* sin informarlo en el pleito de partición de herencia y con ello, permitió que se perfeccionara el Acuerdo con el requisito innecesario de realizar una autorización judicial omitiendo el hecho de que

Álvaro Monsegur ya era mayor de edad, pues había sido emancipado en virtud de las enmiendas realizadas en el 1996 al Artículo 237 del Código Civil de Puerto Rico, 31 LPRA sec. 915, que le concedían capacidad plena para regir sus bienes.[9] De esta forma, el Tribunal de Primera Instancia determinó que el abogado incurrió en conducta censurable y, por ello, lo descalificó. Asimismo, señaló una vista de presentación de prueba para determinar si Álvaro Monsegur, efectivamente, consintió al Acuerdo de forma libre y voluntaria. Finalmente, ordenó que se elevaran los autos a este Tribunal.

El 31 de enero de 2011, los querellantes presentaron una queja disciplinaria ante este Tribunal contra los querellados (AB-2011-26).

Tras varios trámites procesales, el foro primario evaluó la prueba desfilada en torno al consentimiento de Álvaro

---

[9]    Antes de la enmienda realizada por la Ley Núm. 7-1996, el Art. 237 del Código Civil de Puerto Rico, 31 LPRA ant. sec. 915, establecía lo siguiente:

La emancipación habilita al menor para regir su persona y bienes como si fuera mayor; **pero hasta que llegare a la mayor edad no podrá el emancipado contraer promesa u obligación alguna que exceda del importe de sus rentas por un año. Tampoco podrá gravar ni vender bienes inmuebles suyos sin consentimiento de su padre, y el de su madre, cuando ambos ejerzan la patria potestad conjuntamente o el de ellos que ejerza por sí solo** y, en su caso, sin el de su tutor. Tampoco podrá comparecer en juicio sin asistencias de dichas personas. (Énfasis nuestro). Íd.

**Posteriormente, la Ley Núm. 7-1996 enmendó el referido artículo para establecer en lo pertinente, lo siguiente:**

La emancipación habilita al menor para regir su persona y bienes como si fuera mayor. **Toda persona de dieciocho (18) años o más emancipada por sus padres o por aquél con patria potestad podrá regir sus bienes y contraer promesa y obligación sin necesidad de la autorización de éstos.** (Énfasis nuestro). 31 LPRA sec. 915.

Monsegur y continuó con el proceso de la partición de la herencia. **Así, el 22 de agosto de 2013, el foro primario notificó una *Sentencia y Resolución* en la que reinstaló el Acuerdo suscrito por las partes el 7 de mayo de 2007.** En resumen, resolvió que la emancipación de Álvaro Monsegur lo facultó para firmar el Acuerdo. Explicó que, éste participó en el otorgamiento, escuchó los términos y consintió a la transacción. Determinó que Álvaro Monsegur leyó y firmó el Acuerdo con pleno conocimiento de sus efectos, dando así su consentimiento libre y voluntario. Por tanto, razonó que la autorización judicial no era necesaria para hacerlo efectivo.[10]

En cuanto a las actuaciones profesionales de los peticionarios y sus abogados concluyó que "realizaron una falsa representación al tribunal y a las partes en cuanto a la necesidad de tal autorización judicial".

### B. Trámite disciplinario

#### 1. AB-2010-293 – Lcdo. Francisco Rádinson Pérez

**El 10 de noviembre de 2010, el Juez Edwin Nieves Troche emitió una *Resolución y Orden* en la que descalificó al Lcdo. Francisco Rádinson Pérez en el caso.[11]** El 16 de febrero

---

[10]   En desacuerdo, la señora Franqui Sánchez y su hijo, Álvaro Monsegur recurrieron al foro apelativo intermedio (KLAN201301634) para impugnar la reinstalación del *Acuerdo de transacción y relevo* (Acuerdo), al igual que los querellantes (KLAN201301809), que recurrieron para revisar la negativa del foro primario a conceder los intereses por mora y honorarios de abogado. Sin embargo, el Tribunal de Apelaciones emitió una *Sentencia* que denegó ambos recursos y confirmó al Tribunal de Primera Instancia.

[11]   Es meritorio destacar que los Lcdos. Francisco y Sergio Rádinson Caraballo no fueron descalificados en el caso. Posteriormente, el 6 y 8

de 2011, tras atender la resolución, ordenamos al letrado a contestar la queja **(AB-2010-293)**. Así, el 8 de marzo de 2011, el Lcdo. Francisco Rádinson Pérez presentó su contestación por virtud de la cual indicó que actuó de buena fe y sin intención de cometer fraude alguno, ya que contaba con el consentimiento de todas las partes. Sostuvo que actuó conforme a su entendimiento del derecho vigente y, con ello, admitió su desconocimiento de la enmienda al Artículo 237 del Código Civil de Puerto Rico, *supra*, realizada en 1996 por la Ley Núm. 7-1996 que eliminó las restricciones del emancipado sobre sus bienes. Aceptó haber autorizado la escritura de emancipación de Álvaro Monsegur con el único fin de retirar una suma de dinero en el caso de expropiación forzosa (Caso Núm. KEF2003-0026), por lo que negó rotundamente haber actuado con la intención de defraudar al tribunal. Por el contrario, afirmó que ello era para el beneficio y mejor interés de todas las partes. Finalmente, planteó que su conducta constituyó un simple "error humano".

Asimismo, el Lcdo. Francisco Rádinson Pérez señaló que la autorización de dicho documento notarial fue notificada al licenciado Montalvo Delgado, por lo que éste tenía conocimiento de la referida emancipación como representante legal de la sucesión.

El 1 de abril de 2011, remitimos el asunto a la Oficina de la Procuradora General (OPG). El proceso disciplinario

---

de julio de 2015, respectivamente, presentaron su solicitud de renuncia, acogida por el Tribunal de Primera Instancia el 15 de julio de 2015.

estuvo paralizado hasta que culminó el caso de división de herencia ante el Tribunal de Primera Instancia. Así, el 13 de mayo de 2016, ordenamos mediante resolución la continuación de los procedimientos disciplinarios.

**2. AB-2011-26 – Lcdos. Francisco Rádinson Pérez, Francisco Rádinson Caraballo y Sergio Rádinson Caraballo**

**El 31 de enero de 2011, la sucesión presentó una queja disciplinaria (AB-2011-26) ante este Tribunal contra los querellados.**

Posteriormente, el 4 de marzo de 2011, el Lcdo. Francisco Rádinson Pérez sometió su contestación y reiteró que no actuó con intención de defraudar al tribunal al autorizar la escritura. Además, expresó que la representación legal de la sucesión conocía de la presentación del documento en el trámite del caso de expropiación forzosa (Caso Núm. KEF2003-0026) desde octubre de 2006. Posteriormente, el 10 de junio de 2011, los querellados comparecieron y solicitaron la desestimación de la queja.

**El 7 de enero de 2017, a solicitud de la OPG, consolidamos las quejas (AB-2010-293 y AB-2011-26).** Varios meses después, el 1 de marzo de 2017, la OPG remitió su *Informe del Procurador General* (Informe de la OPG). Expuso que los letrados incumplieron con los Cánones 18, 35 y 38 del Código de Ética Profesional, 4 LPRA Ap. IX, al no informar al foro primario o a los representantes legales de las demás partes sobre la escritura de emancipación en el pleito de la partición de herencia. Además, indicó que

incumplieron con los Cánones 12 y 17 del Código de Ética Profesional, *supra*, al causar dilaciones con el trámite de autorización judicial, pudiendo culminar la controversia con el *Acuerdo* en 2007 y no en 2015.

En cuanto al Lcdo. Francisco Rádinson Caraballo, mencionó que pudo infringir los Cánones 9 y 35 del Código de Ética Profesional, *supra*, por no informar su suspensión del ejercicio de la abogacía durante el caso de la partición de herencia.[12] Por otro lado, refirió el caso a la Oficina de Inspección de Notaría (ODIN) para evaluar su desempeño como notario y posible infracción de la Regla 5 del Reglamento Notarial de Puerto Rico, 4 LPRA Ap. XXIV, R.5, al otorgar la *Escritura de emancipación Núm. 41*.[13]

---

[12] La suspensión del Lcdo. Francisco Rádinson Caraballo en *In re Rádinson Caraballo*, 172 DPR 1006 (2008), surgió por su incumplimiento con el Canon 9 del Código de Ética Profesional, 4 LPRA Ap. IX, tras no responder prontamente a los requerimientos de documentos esenciales por parte de la Oficina de Inspección de Notaría (ODIN) para la investigación de la queja (AB-2005-252). El letrado fue suspendido de la profesión de la abogacía el 16 de enero de 2008 y reinstalado el 14 de agosto de 2008.

[13] Como norma general, la Regla 5 del Reglamento Notarial de Puerto Rico, 4 LPRA Ap. XXIV, R.5, establece que los notarios están impedidos de representar legalmente a cualquiera de las partes otorgantes en un pleito posterior mediante el cual se reclamen las prestaciones contenidas en el documento otorgado ante ese notario. En lo pertinente, dispone que:

> La práctica de la profesión de abogado puede ser en algunas ocasiones incompatible con la práctica de la notaría.

> El notario autorizante de un documento público está impedido de actuar posteriormente como abogado de una de las partes otorgantes para exigir en un litigio contencioso las contraprestaciones a que se haya obligado cualquier otra parte en el documento otorgado ante él.

> El notario está impedido de representar como abogado a un cliente en la litigación contenciosa y, a la vez, servir de notario en el mismo caso por el posible conflicto de intereses o incompatibilidades que puedan dimanar del mismo […]. Íd.

Por su parte, el 19 de abril de 2017, los querellados presentaron su *Escrito en torno a informe del procurador general y ofrecimiento de* excusas. Mediante dicho escrito, reiteraron que habían actuado sin intención de defraudar y que la representación legal de la sucesión conocía de la emancipación desde que se otorgó en 2006. Arguyeron que el efecto de la escritura se limitaba a permitir el desembolso del dinero consignado en el caso de expropiación.

### 3. CP-2017-0017

Tras considerar el Informe de la OPG junto al *Escrito en torno a informe del Procurador General y ofrecimiento de excusas* interpuesto por los querellados, el 12 de mayo de 2017, ordenamos se sometiese querella en contra de los tres abogados por los Cánones 12, 17, 18, 35 y 38 del Código de Ética Profesional, *supra*.

En cumplimiento con nuestra orden, el 17 de julio de 2017, la OPG presentó la *Querella* correspondiente.

El 18 de agosto de 2017, los querellados solicitaron la desestimación y negaron que hubieran incurrido en alguna violación ética, porque no actuaron con mala fe ni con intención de fraude. El 1 de diciembre de 2017, denegamos la solitud de los querellados.

Posteriormente, el 11 de septiembre de 2018, designamos a la Hon. Jeannette Ramos Buonomo, Ex Jueza del Tribunal de Apelaciones, como Comisionada Especial (Comisionada) para que recibiera la prueba y nos emitiera un informe con las

determinaciones de hechos y recomendaciones que estimara pertinentes.

Oportunamente se celebró una vista en la cual la OPG sometió su caso por la prueba que consta en los expedientes.[14] Por su parte, los Lcdos. Francisco Rádinson Pérez y Francisco Rádinson Caraballo presentaron sus testimonios.

El 18 de marzo de 2019, la Comisionada remitió el documento intitulado *Informe de la Comisionada Especial* (Informe) con las determinaciones de hechos y recomendaciones de rigor. Concluyó que la conducta de los querellados provocó el incumplimiento de los Cánones 18 y 35 del Código de Ética Profesional, *supra*, y recomendó la censura enérgica como sanción. La Comisionada consideró como atenuantes que no hubo ánimo de lucro, y que los querellados aceptaron su error y mostraron sincero arrepentimiento en todo momento.

Recibido el Informe, el 14 de mayo de 2019, la OPG presentó su *Reacción al Informe de la Comisionada Especial*. De esta forma, reafirmó su postura en torno a que los querellados incumplieron con los preceptos contenidos en los Cánones 12, 17, 18, 35 y 38 de Ética Profesional, *supra*. Sostuvo que, como conocedores del derecho, los querellados debían estar apercibidos que no era necesario el pleito de

---

[14] De hecho, durante la vista, la Hon. Jeannette Ramos Buonomo, Ex Jueza del Tribunal de Apelaciones, designada como Comisionada Especial (Comisionada) aclaró que los cargos de la Queja AB-2010-293 relacionados con el desempeño como Notario del Lcdo. Francisco Rádinson Pérez no fueron parte de la querella.

autorización judicial y su ignorancia causó la dilación de los procesos.[15]

Con el beneficio del Informe, así como con las comparecencias de las partes, el caso quedó sometido para la adjudicación. Por ello, procedemos a enmarcar la controversia en el derecho aplicable.

**II**

El Código de Ética Profesional contiene las normas mínimas que rigen la conducta de los miembros de la profesión con el fin "de promover una conducta ejemplar para beneficio de la ciudadanía, las instituciones de justicia y de la profesión legal". *In re* Blain León, 199 DPR 443, 451 (2017). Véanse, *In re* Nazario Díaz, 198 DPR 793, 802 (2017); *In re* Ortiz, Rivera, 195 DPR 122, 131 (2016); *In re* Ortiz Delgado, 189 DPR 826, 830 (2013). De manera que, los abogados deben conducirse con diligencia, competencia y honradez, de forma que se mantenga un orden jurídico íntegro y eficaz. *In re* Blain León, *supra*; *In re* Feliciano Rodríguez, 198 DPR 369, 378 (2017).

**A. Canon 12 (Puntualidad y tramitación de causas) y Canon 18 (Competencia del abogado y consejo al cliente)**

El Canon 12 del Código de Ética Profesional, 4 LPRA Ap. IX (Canon 12), impone a todo abogado el deber de tramitar

---

[15] Los querellados reaccionaron con una moción presentada fuera del término establecido por el Reglamento de este Tribunal. Por su parte, reiteraron que su desconocimiento resultó ser un error de derecho y con ello, un error de juicio. Véase, *Escrito en oposición al escrito presentado por el procurador general, titulado "Reacción a informe de la comisionada especial"*.

las causas de su cliente de manera responsable, con puntualidad y diligencia. *In re* Otero Calero, 200 DPR 562, 572-573 (2018); *In re* López Santiago, 199 DPR 797, 809-810 (2018); *In re* García Ortiz, 187 DPR 507, 516 (2012); *In re* Nieves Nieves, 181 DPR 25, 35 (2011).

La falta de diligencia que da lugar a sanciones debe ser grave. Por ello, la dilación sin una consecuencia significativa no implica una sanción disciplinaria. Steidel Figueroa, *op. cit.*, sec. 4.08, pág. 232. En particular, el Canon 12 del Código de Ética Profesional, 4 LPRA Ap. IX, dispone que:

> Es deber del abogado hacia el tribunal, sus compañeros, las partes y testigos el ser puntual en su asistencia y conciso y exacto en el trámite y presentación de las causas. Ello implica el desplegar todas las diligencias necesarias para asegurar que no se causen indebidas dilaciones en su tramitación y solución. Sólo debe solicitar la suspensión de vista cuando existan razones poderosas y sea indispensable para la protección de los derechos sustanciales de su cliente. Íd.

Por su parte, el Canon 18 del Código de Ética Profesional, *supra* (Canon 18) establece que:

> Será impropio de un abogado asumir una representación profesional cuando [es] consciente de que no puede rendir una labor idónea, competente y que no puede prepararse adecuadamente sin que ello apareje gastos o demoras irrazonables a su cliente o a la administración de la justicia.
>
> **Es deber del abogado defender los intereses del cliente diligentemente, desplegando en cada caso su más profundo saber y habilidad** y actuando en aquella forma que la profesión jurídica en general estima adecuada y responsable. (Énfasis suplido). Íd.

De esta forma, se le impone un deber ineludible al abogado que se obliga profesionalmente con un cliente de ser responsable, de conducir los asuntos delegados de manera capaz, **competente y diligente, desplegando en todo momento el máximo de sus habilidades y conocimientos**. *In re* Blain León, *supra*, pág. 453; *In re* Nazario Díaz, *supra*, pág. 803.

Conforme a lo anterior, todo abogado tiene el deber ético de conocer el ordenamiento legal y actuar de conformidad al mismo. *In re* Roldán González, 195 DPR 414, 422 (2016); *In re* Ayala Vega I, 189 DPR 672, 679 (2013); *In re* Nieves Nieves, *supra*, pág. 38. Asimismo, el abogado está obligado a defender diligentemente, con celo y dentro del marco ético, los derechos e intereses de su cliente. *In re* Bonhomme Meléndez, 2019 TSPR 105, 202 DPR __ (2019); *In re* García Incera, 201 DPR 1043, 1049 (2019); *In re* Rivera Nazario, 193 DPR 573, 582-583 (2015). Por ello, el deber de diligencia implica que, al abogado aceptar la representación legal de una persona, deberá realizar "las gestiones que le fueron encomendadas en momento oportuno, en forma adecuada y sin dilaciones que puedan afectar la pronta solución de la controversia". Steidel Figueroa, *op. cit.*, sec. 4.04, pág. 221. Véanse, también, *In re* Rivera Rodríguez, 2019 TSPR 140, 202 DPR __ (2019); *In re* García Incera, *supra*, pág. 1050; *In re* Miranda Daleccio, 193 DPR 753, 762 (2015); *In re* Pietri Torres, 191 DPR 482, 488 (2014).

Anteriormente, al discutir y explicar el deber de **competencia** del Canon 18, hemos sido cuidadosos al distinguirlo del deber de **diligencia** impuesto por el Canon 12, ya que:

> [E]l deber de **diligencia** que impone el Canon 12, *supra*, se refiere al deber de actuar oportunamente a favor de un cliente o respecto a órdenes del tribunal [mientras que] [e]l deber de **competencia**, por su parte, puede delimitarse al deber de poseer los conocimientos jurídicos necesarios para la tramitación adecuada de un caso o gestión profesional". (Énfasis nuestro). *In re Muñoz, Morell*, 182 DPR 738, 751 (2011).

Así pues, razonamos al amparo de la siguiente explicación del Hon. Sigfrido Steidel Figueroa:

> Aun cuando el deber de actuar competentemente parece estar subsumido en el deber de diligencia, ambos deberes pueden distinguirse. **El deber de diligencia comprende tanto al deber de actuar oportunamente a favor de un cliente como al deber de cumplir diligentemente las órdenes del tribunal. El de competencia puede circunscribirse exclusivamente al deber de poseer los conocimientos jurídicos necesarios para la tramitación adecuada de un caso o gestión profesional. El primero parecería referirse a cómo el abogado actúa en la tramitación de un caso desde la perspectiva procesal. El segundo parece referirse al conocimiento que se tiene, o más bien, en cuán "al día" está el abogado en el conocimiento del Derecho.** Sin embargo, no actuar oportunamente pudiera ser consecuencia de que se carece del conocimiento de que se debía actuar […]. (Énfasis suplido). Steidel Figueroa, *op. cit.*, pág. 233.

No podemos olvidar que la representación legal adecuada presupone que el abogado posee los conocimientos y las destrezas jurídicas vinculadas a su gestión profesional. Ello, podrá lograrse cuando el abogado realiza un estudio

riguroso y continuo de las normas legales aplicables a las controversias planteadas en cada uno de sus casos.  Véase, Canon 2 del Código de Ética Profesional, *supra*.

### B. Canon 17 (Litigios injustificados)

El Canon 17 del Código de Ética Profesional, *supra* (Canon 17)[16] prohíbe al abogado iniciar procesos judiciales a favor de su cliente cuando esté convencido que a través de éstos se pretende molestar, hostigar y perjudicar a la parte adversa.  *In re* Irizarry Rodríguez, 193 DPR 633, 663-664 (2015); *In re* Salas Arana, 188 DPR 339, 341-342 (2013). Además, expone que la comparecencia de un abogado ante el tribunal equivale a una afirmación sobre su honor de que, a su juicio, el caso de su cliente es digno de un remedio judicial.  Por consiguiente, al suscribir un escrito judicial, el abogado certifica que lo leyó y que, conforme

---

[16]  El Canon 17 del Código de Ética Profesional, *supra*, dispone lo siguiente:

> Todo abogado debe negarse a representar a un cliente en un caso civil cuando estuviere convencido de que se pretende por medio del pleito molestar o perjudicar a la parte contraria, haciéndole víctima de opresión o daño.  Su comparecencia ante un tribunal debe equivaler a una afirmación sobre su honor de que en su opinión el caso de su cliente es uno digno de la sanción judicial.  La firma de un abogado en una alegación en un caso equivale a certificar que ha leído la alegación y que de acuerdo con su mejor conocimiento, información y creencia está bien fundada.

> Un abogado deberá solicitar permiso del tribunal para renunciar la representación profesional de su cliente en un caso en litigio cuando se convenza durante el curso del pleito que el mismo es injustificado y que se pretende por medio del proceso molestar o perjudicar a la parte contraria, haciéndole víctima de opresión o daño. Íd.

a su juicio, información y conocimiento, está bien fundado. *In re* Guzmán Guzmán, 181 DPR 495, 509 (2001).

Consecuentemente, actúa en contravención a este canon todo abogado que presente un escrito con alegaciones falsas o que carecen de la prueba necesaria para sustentarlas, más aun si las mismas inducen a error al tribunal. *In re* Irizarry Rodríguez, *supra*, pág. 664; *In re* Guzmán Guzmán, *supra*. Igualmente, infringe el canon el abogado que durante el transcurso de un pleito se percata de que es injustificado y no se lo informe al cliente, ni presenta su renuncia formal para la consideración del foro judicial. *In re* Rivera Contreras, 2019 TSPR 56, 202 DPR __ (2019); *In re* Irizarry Rodríguez, *supra*, pág. 664.

### C. Canon 35 (Sinceridad y honradez)

En lo pertinente, el Canon 35 del Código de Ética Profesional, *supra* (Canon 35) dispone que:

> La conducta de cualquier miembro de la profesión legal ante los tribunales, para con sus representados y en las relaciones con sus compañeros debe ser sincera y honrada.
>
> No es sincero ni honrado el utilizar medios que sean inconsistentes con la verdad ni se debe inducir al juzgador a error utilizando artificios o una falsa relación de los hechos o del derecho. Íd.

Como se puede colegir, este canon exige a los abogados ser sinceros y honrados con sus representados, sus compañeros abogados y el tribunal. *In re* Peña Ríos, 2019 TSPR 52, 202 DPR __ (2019). En ese sentido, hemos expresado que el Canon 35 del Código de Ética Profesional, *supra*, requiere que la conducta de todo miembro de la profesión se

caracterice por la sinceridad y la honradez. *In re* Rivera Contreras, *supra*; *In re* Peña Ríos, *supra*. Añade el precepto que no es sincero ni honrado utilizar medios incompatibles con la verdad, ni se debe inducir a error al juzgador mediante artificios o una falsa relación de los hechos o del derecho. *In re* Ortiz Sánchez, 201 DPR 765, 781 (2019); *In re* Irizarry Vega, 198 DPR 1066, 1075 (2017); *In re* Pagani Padró, 198 DPR 812, 823 (2017); *In re* Nazario Díaz, *supra*, pág. 805; *In re* Irizarry Rodríguez, 193 DPR 633, 665 (2015).

Conforme a lo anterior, el abogado que provee información falsa al tribunal o que no se ajuste a la verdad, o que oculte información que deba ser revelada, incumple con este canon. *In re* Rivera Contreras, *supra*; *In re* Ortiz Sánchez, *supra*; *In re* Torres Viñals, 180 DPR 236, 248 (2010). Asimismo, en cuanto al elemento de la **intención** para incurrir en el incumplimiento de este canon, anteriormente hemos expresado que:

> El deber establecido en el Canon 35 se infringe por el simple hecho de faltar a la verdad, independientemente de los motivos de la falsedad. En esencia, no es necesario que se haya faltado a la verdad deliberadamente o con la intención de defraudar o engañar […]. Lo fundamental es que se falte a los valores de honradez y veracidad, pilares de la profesión legal. *In re* Reyes Coreano, 190 DPR 739, 756 (2014). Véanse, *In re* Iglesias García, 183 DPR 572, 578 (2011); *In re* Nieves Nieves, *supra*, págs. 41-42; *In re* Astacio Caraballo, 149 DPR 790, 799 (1999).

Conforme a ello, hemos determinado que el desconocimiento y la falta de intención no impiden que se

incumpla con el Canon 35. *In re* Iglesias García, *supra*, pág. 579.

Ahora bien, recientemente en *In re* Rivera Contreras, *supra*, al evaluar si una letrada incurrió en una violación ética durante la tramitación de un procedimiento de inmigración, determinamos que los valores de honradez y sinceridad al inducir a error al tribunal se infringen **si media la intención de faltar a la verdad.** En particular, expresamos que la abogada no incurrió en violación del Canon 35, ya que "no tuvo la **intención** de inducir a error a este Foro ni a la [OPG] cuando nos informó sobre el desenlace de la demanda civil presentada en su contra". (Énfasis suplido). Íd. De esta forma, nuestra postura reciente es cónsona con el análisis del elemento de la intención en el Canon 35 que presenta el Hon. Sigfrido Steidel Figueroa al razonar lo siguiente:

> […] ¿Cómo se falta a los valores de honradez y veracidad si no media conducta deliberada o de mala fe? **La caracterización de hechos no veraces de manera inconsciente o por inadvertencia cuando así se prueba no debe acarrear sanciones disciplinarias en ausencia de circunstancias especiales, como lo sería que el abogado actúe con poco o ningún rigor profesional.**
>
> .    .    .    .    .    .    .    .    .
>
> […] **[L]a exposición de hechos falsos, sin intención, está más próxima a pobre rigor profesional, razón por la cual no está implicado el deber […] de ser sincero. Los deberes implicados son los de diligencia y competencia, pues, […] la violación del deber de sinceridad supone consciencia de los hechos y deliberación de falsearlos.** (Énfasis nuestro). Steidel Figueroa, *op. cit.*, págs. 252 y 255.

### D. Canon 38 (Preservación del honor y dignidad de la profesión)

El Canon 38 del Código de Ética Profesional, *supra* (Canon 38) puntualiza que los dos (2) valores principales con los que debe cumplir un abogado son: la dignidad y el honor al ejercer la abogacía y en su vida privada. Asimismo, instituye el deber de evitar hasta la apariencia de conducta profesional impropia. Por consiguiente, todo letrado debe actuar de forma escrupulosa y guiado por un alto sentido de responsabilidad considerando la función social que ejerce y la institución que representa. *In re* Nieves Nieves, *supra*, pág. 45; *In re* Fingerhut Mandry, 196 DPR 327, 333 (2016). Sin embargo, al momento de evaluar su incumplimiento, hemos expresado que no es suficiente determinar que los abogados violaron otros cánones para infringir el Canon 38. *In re* Reyes Coreano, *supra*, pág. 758.

### E. Sanción

En cuanto a la sanción disciplinaria por el comportamiento exhibido, debemos considerar los factores siguientes: (1) la reputación del abogado en la comunidad; (2) su historial disciplinario; (3) si la conducta es aislada; (4) si medió ánimo de lucro; (5) si presentó una defensa frívola de su conducta; (6) si ocasionó perjuicio a alguna parte; (7) si resarció al cliente; (8) si demostró aceptación o arrepentimiento sincero por la conducta que le fue imputada, y (9) otros atenuantes o agravantes que surjan de los hechos. *In re* Meléndez Figueroa, 2019 TSPR 148, 202

DPR __ (2019); *In re* Rivera Rodríguez, *supra*; *In re* Padilla Avilés, 2019 TSPR 141, 202 DPR __ (2019); *In re* Roldán González, *supra*, pág. 425; *In re* Miranda Daleccio, *supra*, pág. 766 esc. 4.

Con el fin de evitar la arbitrariedad y promover una reglamentación ética uniforme y coherente, es necesario tratar las faltas semejantes del mismo modo. *In re* Rivera Nazario, *supra*, págs. 587-588; *In re* Díaz Alonso, Jr., 115 DPR 755, 760-761 (1984). Esto significa que, al decidir la sanción disciplinaria, es forzoso ponderar las sanciones que hemos impuesto a otros miembros de la profesión en infracciones disciplinarias análogas, tras llevar a cabo la revisión de los precedentes. *In re* Rivera Nazario, *supra*.

Ahora bien, al momento de imponer la medida disciplinaria, debemos reconocer que cada uno de los casos presenta circunstancias únicas y determinantes que, en ocasiones, justifican que nos distanciemos de la sanción disciplinaria otorgada en ocasiones anteriores ante situaciones similares. *In re* Villalba Ojeda, 193 DPR 966, 982-983 (2015); *In re* De León Rodríguez, *supra*, págs. 396-397. "Lo importante es que cuando nos apartemos de los precedentes similares, brindemos una explicación satisfactoria que justifique nuestro proceder". *In re* Villalba Ojeda, *supra*.

**III**

En esta ocasión coincidimos en parte con la recomendación del Informe al concluir que los querellados

incumplieron con el Canon 18 del Código de Ética Profesional, *supra*. Así, reiteramos que no estamos obligados por la recomendación del informe realizado, y en lugar de adoptarlo, podemos modificarlo o rechazarlo. Aunque, en cuanto a su apreciación de los hechos, hemos reiterado que daremos deferencia, salvo que el récord demuestre que fueron parcializados, apasionados, prejuiciados o manifiestamente erróneos. *In re* Rivera Rodríguez, *supra*; *In re* Ramírez Salcedo, 199 DPR 208, 215-216 (2017); *In re* Pietri Castellón, 185 DPR 982, 995 (2012).

De hecho, la Comisionada otorgó credibilidad a la versión de los letrados de que el origen de su error fue el ignorar el derecho vigente desde el inicio de su gestión profesional. Entendió que, como resultado de dicho desconocimiento, éstos llegaron a una conclusión jurídica incorrecta durante el curso de la representación legal, por entender que la emancipación realizada en el trámite de expropiación se limitaba a ese proceso sin tener efecto alguno sobre el otro litigio concerniente a la partición de herencia. Por consiguiente, razonaron que no era necesario informarlo en el proceso paralelo, ya que el propósito de emancipar a Álvaro Monsegur se limitaba a permitir el retiro del dinero consignado en el caso de expropiación, sin advertir que ese dictamen le otorgó capacidad jurídica completa para regir sus bienes. Lo anterior, puesto que, en ese momento, desconocían de la enmienda al Artículo 237 del Código Civil de Puerto Rico, *supra*, por la Ley Núm. 7-

1996.

Es decir, la admisión de los letrados de que ignoraban el estado del ordenamiento legal relevante para su gestión profesional configuró una violación a su deber de representar competentemente los intereses de sus representados, consignado en el Canon 18. Coincidimos en este aspecto con la Comisionada.

Ahora bien, a base de lo anterior, la Comisionada también concluyó que los querellados incumplieron con el Canon 35, por entender que éstos indujeron a error al Tribunal de Primera Instancia pues, ante su desconocimiento del derecho vigente omitieron información que le debió ser revelada al juzgador. Específicamente, ésta hizo referencia a que los letrados no divulgaron la emancipación previa del menor en el pleito de expropiación, lo que tornó innecesaria la autorización judicial que se puso como condición en el Acuerdo de la partición de herencia. Además, se hubiese evitado también el intento del menor de retractar su consentimiento del Acuerdo.

Contrario a la determinación de la Comisionada, resolvemos que la actuación de los letrados **no** resultó ser contraria al Canon 35. A pesar de que anteriormente hemos indicado que la falta de intención no es un elemento necesario para la violación a esta disposición ética, esto presupone que el abogado imputado de la infracción **sí** tenía conocimiento de los hechos en los que está cimentado el supuesto engaño al tribunal.

En este caso, la conducta de los letrados no evidenció un designio de defraudar al foro primario sino más bien un desconocimiento del ordenamiento legal vigente que se traduce en poco rigor profesional. Ello, denotó una caracterización inexacta de los hechos presentados al juzgador por inadvertencia o de manera inconsciente que claramente contrasta con la representación ficticia de los hechos que surge de una conducta deliberada de falsearlos a consciencia de la falsedad de los mismos. Consecuentemente, según los hechos probados y examinados por la Comisionada, quedó demostrado que los querellados por omisión proveyeron al tribunal la información incorrecta de la capacidad jurídica de Álvaro Monsegur, a causa de la falta de rigor profesional que atentó contra los deberes de competencia y diligencia.

Por lo tanto, concluimos que, bajo las circunstancias particulares de este caso, el incumplimiento de los letrados no configuró la violación a los postulados de sinceridad y honradez protegidos por el referido Canon 35.

Por otro lado, coincidimos con el Informe al descartar que los abogados infringieron los Cánones 12, 17 y 38. Veamos.

Tras examinar el trámite procesal del pleito de partición de herencia, determinamos que la continuación del litigio posterior a mayo de 2007 -cuando las partes otorgaron el Acuerdo- y los trámites apelativos, son resultado de la defensa de los intereses de los

representados por los letrados. Específicamente, al impugnar el consentimiento del señor Monsegur Franqui al Acuerdo y con ello, la validez del mismo, los letrados actuaron siempre de manera oportuna y diligente en beneficio de sus clientes y acatando las órdenes del tribunal. De manera que, la dilación sin una consecuencia significativa no acarrea una sanción disciplinaria por incumplimiento del Canon 12 como ocurrió en el caso ante nos.

Por otra parte, la admisión de la falta de conocimiento del derecho junto a la determinación de la Comisionada sobre la falta de evidencia clara, robusta y convincente por parte de la OPG para establecer que los querellados conocían la falta de necesidad de la petición de autorización judicial y la impugnación de la validez del Acuerdo, nos lleva a concluir que los letrados actuaron amparados en su mejor conocimiento, información y creencia. Ante ese panorama, no podemos inferir que los pleitos entablados, aunque innecesarios, estuvieron motivados por el propósito de molestar, hostigar o perjudicar a la otra parte, según prescrito por el Canon 17.

De la misma manera, según los hechos reseñados, la conducta de los letrados al tener como base la falta de rigor profesional, tampoco configura el supuesto de apariencia de conducta impropia que atenta contra el honor y la dignidad de la profesión, contemplado en el Canon 38.

En cuanto a la sanción, consideramos como atenuantes que no hubo ánimo de lucro, ya que los querellados no han cobrado

por sus servicios y, además, aceptaron su error en todo momento con sincero arrepentimiento.[17] Ahora bien, en lo que respecta al Lcdo. Francisco Rádinson Caraballo, consideramos como agravante que, según mencionáramos, éste fue suspendido anteriormente de la abogacía y la notaría en *In re* Rádinson Caraballo, 172 DPR 1006 (2008), suspensión que nunca comunicó en el trámite procesal de la partición de herencia.

De conformidad con lo expuesto y habida cuenta de que únicamente se infringió el Canon 18, con el fin de promover la uniformidad en la imposición de sanciones, censuramos enérgicamente a los Lcdos. Francisco Rádinson Pérez y Sergio Rádinson Caraballo.[18] En cuanto al Lcdo. Francisco Rádinson Caraballo, considerando el agravante mencionado, decretamos su suspensión inmediata del ejercicio de la abogacía por el término de un (1) mes.

**IV**

Por los fundamentos que anteceden, **censuramos enérgicamente** a los Lcdos. Francisco Rádinson Pérez y Sergio Rádinson Caraballo. Además, decretamos la suspensión inmediata del Lcdo. Francisco Rádinson Caraballo del ejercicio de la abogacía por el término de un (1) mes. El Sr. Francisco Rádinson Caraballo deberá notificar de forma

---

[17] Véase, *Escrito en oposición al escrito presentado por el Procurador General, titulado "Reacción a informe de la Comisionada Especial"*.

[18] Véanse, *In re Pérez Villanueva*, 198 DPR 1006 (2017); *In re Pietri Torres*, 191 DPR 482 (2014); *In re Portela Martínez*, 191 DPR 84 (2014).

inmediata a sus clientes que, por motivo de su suspensión, no podrá continuar proveyéndoles consultoría ni representación legal, y deberá devolverles los expedientes de los casos pendientes, así como los honorarios recibidos por trabajo no realizado. De igual manera, tendrá la responsabilidad de informar inmediatamente de su suspensión a todos los foros judiciales y administrativos en los que tenga algún caso pendiente. Asimismo, deberá acreditar y certificar ante este Tribunal el cumplimiento con todo lo anterior, dentro del término de treinta (30) días, contado a partir de la notificación de la presente Opinión *Per Curiam* y Sentencia. No hacerlo pudiera conllevar que no se le reinstale al ejercicio de la profesión de solicitarlo en el futuro.

Se apercibe a los letrados que, de incurrir en conducta impropia en el futuro, podrán ser sancionados de forma más severa. Les advertimos, además, que deberán ser más cuidadosos con el ejercicio de la función profesional que desempeñan y ceñirse estrictamente a los deberes deontológicos que impone el Código de Ética Profesional.

Se dictará Sentencia de conformidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

*In re*:

| | | |
|---|---|---|
| Francisco Rádinson Pérez | CP-2017-17 | Conducta |
| Francisco Rádinson Caraballo | | Profesional |
| Sergio Rádinson Caraballo | | |

SENTENCIA

En San Juan, Puerto Rico a 23 de julio de 2020.

Por los fundamentos expuestos en la Opinión *Per Curiam* que antecede, la cual se hace formar parte íntegra de la presente Sentencia, **censuramos enérgicamente** a los Lcdos. Francisco Rádinson Pérez y Sergio Rádinson Caraballo. Además, decretamos la suspensión inmediata del Lcdo. Francisco Rádinson Caraballo del ejercicio de la abogacía por el término de un (1) mes.

El Sr. Francisco Rádinson Caraballo *deberá notificar de forma inmediata a sus clientes que, por motivo de su suspensión, no podrá continuar proveyéndoles consultoría ni representación legal, y deberá devolverles los expedientes de los casos pendientes, así como los honorarios recibidos por trabajos no realizados. De igual manera, tendrá la responsabilidad de informar inmediatamente de su suspensión a todos los foros judiciales y administrativos en los que tenga algún caso pendiente. Asimismo, deberá acreditar y certificar ante este Tribunal el cumplimiento con todo lo anterior, dentro del término de treinta (30) días, contado a partir de la notificación de la Opinión Per Curiam que antecede y esta Sentencia. El no hacerlo podría* conllevar que no se le reinstale al ejercicio de la profesión de solicitarlo en el futuro.

Se apercibe a los letrados que, de incurrir en conducta impropia en el futuro, podrán ser sancionados de forma más severa.  Se les advierte, además, que deberán ser más cuidadosos con el ejercicio de la función profesional que desempeñan y ceñirse estrictamente a los deberes deontológicos que impone el Código de Ética Profesional.

Notifíquese esta Opinión *Per Curiam* y Sentencia por medio del correo electrónico registrado en el Registro Único de Abogados y Abogadas de Puerto Rico (RUA).  El recibo de la notificación será confirmado por la vía telefónica.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo.  La Jueza Asociada señora Pabón Charneco disiente y hace constar la siguiente expresión:

La Jueza Asociada señora Pabón Charneco disiente en cuanto al tratamiento del Canon 35 en la Opinión *Per Curiam* y el alcance que le da a nuestras expresiones en *In re* Rivera Contreras, 202 DPR 73 (2019).

El Canon 35 del Código de Ética Profesional no requiere que el abogado o la abogada tenga la intención de violar las normas éticas, aunque sí debe tomarse en consideración la falta de intención al determinar la sanción disciplinaria a imponerse. *In re* Peña Ríos, 202 DPR 5 (2019); *In re* Iglesias García, 183 DPR 572 (2011). Por el contrario, basta que voluntariamente y con conocimiento incurra en los actos que se le imputan. G. Figueroa Prieto, Conducta Profesional, 71 Rev. Jur. UPR 237, 242 (2002), citando a C.W. Wolfram, Modern Legal Ethics, St. Paul, Minn., West Publishing Co., 1986.

La Juez Asociada señora Rodríguez Rodríguez disiente sin Opinión escrita. El Juez Asociado señor Colón Pérez no intervino.

José Ignacio Campos Pérez
Secretario del Tribunal Supremo